# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

UNITED STAES OF AMERICA,

    Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　Case No. 18-CR-62

BRIAN L. GANOS,
MARK F. SPINDLER,
SONAG COMPANY INC, and
NUVO CONSTRUCTION COMPANY INC,

    Defendants,

v.

STATE OF WISCONSIN,

    Movant.

## ORDER DENYING MOTIONS TO QUASH

The United States and third-party State of Wisconsin have both moved to quash subpoenas served on Wisconsin governmental entities by defendant Sonag Company Inc. pursuant to Fed. R. Crim. P. 17. *See* State of Wisconsin's Motion to Quash, ECF No. 53; United States' Motion to Quash Subpoenas Duces Tecum, ECF No. 55. For the reasons that follow, the motions to quash are denied and the subpoenas are hereby enforced.

**I.　　Background**

On July 20, 2018, Sonag moved for an order approving and enforcing subpoenas duces tecum that Sonag sought to, but had not yet served, on two

Wisconsin governmental entities, the Department of Transportation and the Wisconsin Elections Board. Defendant's Motion for Preliminary Order Approving and Enforcing Subpoenas *Duces Tecum* Before Anticipated Challenge to Jury Plan, ECF No. 32. Sonag asserted that this District's jury plan "includes several features that predictably lead to under-representation of racial and ethnic minorities in jury venires (and ultimately on empaneled juries)." *Id.* at 3. The motion then set out facts and arguments supporting this assertion, in effect showing cause for concern about the venires produced by the District's jury plan. *Id.* at 2-5. Sonag also explained that it has retained an expert who would use the information subpoenaed from the state entities to determine whether Sonag has sufficient factual, statistical, and legal bases to bring a motion attacking the jury plan. *Id.* at 6-8.

In response to the motion, the Court convened a hearing on July 24, at which Sonag committed to (1) comply with an appropriate protective order to safeguard any confidential information it might obtain, (2) take steps to minimize the need for confidential information, (3) work cooperatively with the State of Wisconsin to obtain the requested information, and (4) share any information it receives with the United States. The Court bifurcated any motion practice that Sonag might pursue regarding the jury plan issue from the deadlines already in place for pretrial motions, endorsed use of Fed. R. Crim. P. 17 to obtain the information Sonag sought, and set a return date of August 17, 2018, for the subpoenas. *See* Court Minutes for Motion Hearing, ECF No. 34.

2

On July 25, 2018, Sonag subpoenaed the Wisconsin Elections Commission to produce its WisVote database, *see* Exhibit A to U.S.'s Mot., ECF No. 55-2, and the Wisconsin Department of Transportation to produce its driver's-license-holders database, *see* Exhibit B to U.S.'s Mot., ECF No. 55-3. Both subpoenas limited their scope to require production only as to those residents within the twelve counties comprising the Milwaukee Division of the Eastern District of Wisconsin. Moreover, both subpoenas required production by August 17, 2018.

This Court then conducted a series of hearings to monitor subpoena issues. On August 7, Sonag reported making significant progress with the subpoenaed entities. In addition, Assistant Attorney General Randall Schneider entered an appearance and explained, without waiving any right to later resist enforcement, the steps his office had taken to coordinate a response to the subpoenas and to safeguard confidential information. The United States expressed concern about not allowing subpoena compliance issues to interfere with overall case scheduling and reserved its right to move to quash. *See* Court Minutes of Status Conference, ECF No. 35. On August 24, Sonag again reported that it had made good progress with the subpoenaed entities and that it had agreed to terms on a protective order with the State of Wisconsin to protect confidential information. The United States sought and obtained extra time for review before agreeing to sign the protective order. The Court moved the subpoena return date to September 14. *See* Court Minutes for Status Conference, ECF No. 45.

On August 31, the State of Wisconsin filed a short motion to quash, ECF No. 53, and the United States followed suit on September 6, with its own, longer motion, ECF No. 55.

On September 17, 2018, the Court held a status hearing in which, among other things, it indicated it would deny the motions to quash. The State of Wisconsin reported that it needed some additional time for subpoena compliance, but that it had been working diligently to comply and expected production within a matter of weeks. The United States again expressed concern about the subpoena issues affecting the trial date. *See* Court Minutes for Status Conference, ECF No. 68. Finally, on October 2, the Court held its final status conference. The State of Wisconsin reported that it had compiled all the data requested in the subpoenas and was ready to produce. The Court thanked Mr. Schneider for the State's exemplary conduct. The parties then addressed the manner in which the motions to quash would be adjudicated, with the Court explaining it would issue a written order by October 5 given that the United States wished to continue to pursue the matter. In this regard, the Court stayed compliance with the subpoenas unless and until the District Court denies the motions to quash. *See* Court Minutes for Status Conference, ECF No. 71.

II. **Analysis**

The United States begins by asserting that criminal defendants are afforded only limited discovery, and that what discovery is to be afforded is provided for by Fed. R. Crim. P. 16. *See* United States' Memorandum in Support of Motions to

4

Quash Subpoenas Duces Tecum 4-5, ECF No. 55-1. This may all be true, but it is also beside the point. Under its own terms, Rule 16 "regulates discovery by the defendant of evidence in possession of the prosecution, and discovery by the prosecution of evidence in possession the defendant." Fed. R. Crim. P. 16 advisory committee's note to 1975 amendment. Rule 17, on the other hand, is a device that a party (either prosecution or defendant) can use to obtain information from non-parties. So the policy reasons for limiting discovery into law enforcement entities that illuminate Rule 16 burn less brightly in the Rule 17 context. In fact, Rule 17 as originally adopted was "substantially the same" as rule 45 of the Federal Rules Civil Procedure. Fed. R. Crim. P. 17 advisory committee's note to 1944 amendment.

Because the Court is limiting its analysis to whether production of the subpoenaed material may be obtained under Rule 17, there is no need to address the arguments made by the United States regarding other potential sources of authority. *See* U.S.'s Mem. 7-8.

As to Rule 17(c), which Sonag seeks to invoke, the Supreme Court ruled in *United States v. Nixon* that a party seeking to overcome a motion to quash must satisfy the following four-factor test:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'

418 U.S. 683, 699-700 (1974). Sonag has shown that it meets all four factors.

5

Case 2:18-cr-00062-PP-DEJ   Filed 10/05/18   Page 5 of 10   Document 72

### A. The documents must be evidentiary and relevant

As Sonag notes, neither the United States nor the State have contested the potential relevance of the information sought in the subpoenas. Defendant Sonag's Response to Motions to Quash 10, ECF No. 56. It is undisputed that, under this District's jury plan, the Clerk of Court uses the subpoenaed WisVote database to draw names for potential jurors. It is also undisputed at this point that demographic information regarding the names in the WisVote database may be obtained from the subpoenaed drivers-license-holders database. Sonag seeks to use an expert to correlate the two databases to determine whether the jury plan results in a fair cross-section in the venires. If not, then a pre-trial motion can follow.

The United States argues that Sonag has undercut its need for the subpoenaed information by its admission during a status conference that the subpoenaed information may not, in the end, support a fair cross-section challenge. U.S.'s Mem. 6. The Court disagrees. Sonag's counsel cannot be faulted for complying with ethical responsibilities regarding the filing of meritless motions. Just as in *Nixon*, where the special prosecutor sought certain White House tape recordings, there is no guarantee that the subpoenaed information will in fact prove to be relevant. Sonag has proffered the preliminary conclusion of its expert that, based on publicly available information, the jury plan does not result in a fair cross-section. Def.'s Mot. 4-6; Def.'s Br. 10, 12. This proffer is more than sufficient for Sonag to carry its burden.

## B. The documents are otherwise unavailable in advance of trial

The information Sonag seeks is not publicly available and thus could not be obtained even by the exercise of extraordinary, much less ordinary, due diligence. This is especially so because a small part of the subpoenaed information is confidential, and will be protected under a suitable protective order. There simply is no other mechanism available to Sonag to obtain the subpoenaed information.

## C. Sonag could not prepare for trial without the subpoenaed information

Any motion that Sonag might bring regarding whether the jury plan violates a fair cross-section requirement would need to be brought before trial. Respect for the time of the jurors demands nothing less.

The United States does not argue the timing point—presumably, it agrees that a fair cross-section challenge should be brought before a jury is empaneled. Rather, the United States asserts that Sonag already possesses demographic information (JS-12 Reports) sufficient to conduct a fair cross-section analysis. U.S.'s Mem. 6. Sonag counters, persuasively, that it has retained an expert who has conducted a preliminary analysis based on the JS-12 Reports and other sources and has made a preliminary determination that the jury plan does not result in a fair cross section. *See* Def.'s Mot. 4-6. But Sonag says the expert needs the granular demographic information that only the drivers-license-holder database can provide. *Id.* As the United States has not proffered a contrary expert opinion, the Court believes that Sonag has set out a sufficient need for the information sought in the subpoenas.

7

### D. Sonag is not engaging in a fishing expedition

The United States reiterates its complaint that Sonag is engaging in discovery and that Sonag cannot assure the Court that the subpoenaed information will lead to a pre-trial challenge to the jury plan. Regarding the first point, as noted above, the United States might have an argument about impermissible discovery if Sonag were proceeding under Rule 16 or if Sonag were using Rule 17 to obtain discovery of evidence in the possession of the prosecution. That's not what Sonag is doing. It is properly using Rule 17(c) to obtain relevant information for use by its expert to craft a potential fair cross-section claim.

As to the second point, Sonag has been anything but scattershot in its approach to obtaining the information sought here. As detailed during the status hearings, Sonag has worked closely with the State entities to minimize both burden on the State and use of confidential information. The precision of the requests belie the fishing expedition claim. Moreover, the State has, admirably, been able to complete all work necessary for production. Everything is set for production of the subpoenaed materials, and it is only the motion to quash that prevents this matter from proceeding.

Finally, a word on standing. "A party only has standing to move to quash the subpoena issued to another when the subpoena infringes upon the movant's legitimate interests." *United States v. Tomison,* 969 F. Supp. 587, 596 (E.D. Cal. 1997) (citing *United States v. Raineri,* 670 F.2d 702, 712 (7th Cir.1982)). The government will often lack standing to challenge a subpoena issued to a third party

8

absent a claim of privilege, proprietary interest in the subpoenaed material, or some other interest in the subpoenaed material. *United States v. Daniels*, 95 F. Supp. 2d 1160, 1164 (D. Kan. 2000).

The Court is not at all convinced that the United States has standing to move to quash under the circumstances here. Compliance with the subpoenas can be completed now, so enforcement of the subpoenas would not jeopardize the trial date at this point. Beyond the interest in a speedy trial, the United States has not identified any other reason why it would have standing to contest enforcement of the subpoenas.

The Court nevertheless believes it appropriate to engage in the *Nixon* analysis given that the State, which unquestionably has standing, also moved to quash. It is noteworthy that the State did not seek to argue that the subpoenas imposed any undue burden or that they were vague, overbroad, or otherwise oppressive. *See Nixon,* 418 U.S. at 698 ("A subpoena for documents may be quashed if their production would be 'unreasonable or oppressive' but not otherwise."). To the contrary, the State has worked professionally with Sonag to complete all the steps necessary for production. There being no reason in the record to believe that enforcement would be unreasonable or oppressive, the motion to quash is denied.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the Motions to Quash filed by the State of Wisconsin, ECF No. 53, and the United States, ECF No. 55, are **DENIED**.

**IT IS FURTHER ORDERED** that, notwithstanding any local rule to the contrary, any appeal of this Order to the District Judge shall be taken within **TEN DAYS** of the entry of this Order and that any reply be submitted by Sonag **SEVEN DAYS** thereafter.

**IT IS FURTHER ORDERED** that the subpoenas served by Sonag are enforceable but that compliance need not occur unless and until the District Judge affirms this instant Order. Accordingly, Defendant's Motion for Preliminary Order Approving and Enforcing Subpoenas *Duces Tecum* Before Anticipated Challenge to Jury Plan, ECF No. 32, is **GRANTED IN PART** and **DENIED IN PART**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(A), Fed. R. Crim. P. 59(a), and E.D. Wis. Gen. L. R. 72(c), whereby written objections to any order herein, or part thereof, may be filed within fourteen days of service of this Order or prior to the Final Pretrial Conference, whichever is earlier. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Failure to file a timely objection with the district judge shall result in a waiver of a party's right to appeal. If no response or reply will be filed, please notify the Court in writing.

Dated at Milwaukee, Wisconsin, this 5th day of October, 2018.

**BY THE COURT:**

*s/ David E. Jones*
DAVID E. JONES
United States Magistrate Judge
