# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA,**

    Plaintiff,

    v.                                                  Case No. 18-CR-62

**BRIAN L. GANOS** and
**SONAG COMPANY INC.,**

    Defendants.

## REPORT AND RECOMMENDATION ON
## DEFENDANT'S MOTION TO SUPPRESS, ECF NO. 39

    In 2014, a confidential source approached law enforcement with information about an inappropriate affiliation between four Milwaukee construction businesses. According to the confidential source, Brian Ganos manipulated the four businesses to obtain government set-aside contracts for which he was not entitled. Based on information provided by the confidential source, and uncovered through other sources, in July 2016, a federal law enforcement agent obtained warrants to search (1) the Milwaukee office building that Mr. Ganos owned and that housed the businesses in question and (2) the Menomonee Falls home office of the businesses' accountant. Agents recovered evidence from the office building that eventually led to Mr. Ganos, his company (Sonag Company, Inc.), and others being charged in federal court with various offenses.

Mr. Ganos (joined by Sonag) has moved to suppress all evidence recovered from those searches, arguing that the affidavits submitted in support of the search-warrant applications did not provide the issuing judge with sufficient information to assess the credibility of the confidential sources. The United States argues that Mr. Ganos lacks standing to challenge the search warrants, the search warrants were supported by probable cause, and the executing officers relied on the warrants in good faith.

The Court agrees with the United States. Because Mr. Ganos did not have a legitimate expectation of privacy in the invaded space, he may not challenge the search of the Menomonee Falls home office or the entire Milwaukee office building. Moreover, the totality of the circumstances demonstrate that the issuing judge had a substantial basis for concluding that probable cause existed to search the office building. Even if Mr. Ganos had a legitimate expectation of privacy and the search-warrant affidavits lacked probable cause, the good-faith exception to the exclusionary rule would save the evidence at issue here. The Court therefore will recommend that Mr. Ganos's motion to suppress be denied.

## I. Background

On July 29, 2016, Suzanne Humeniak, a Special Agent with the U.S. Department of Veteran Affairs, Office of Inspector General, applied for warrants to search a Milwaukee office building, *see* Exhibit A to Brian Ganos' Motion to Suppress Evidence, ECF No. 39-1, and a Menomonee Falls home office, *see* Exhibit B to Def.'s Mot., ECF No. 39-2, for evidence relating to a scheme to defraud the

United States and other entities. The affidavits submitted in support of the search-warrant applications appear to be identical. Therein, SA Humeniak asserted that certain named individuals and their affiliated companies had engaged in a scheme to seek and obtain government set-aside contracts for which they were not eligible. Def.'s Mot., Exs. A & B ¶¶ 6–11.

The forty-seven-page affidavits contain the following allegations. In 1992, Brian Ganos became the owner and president of Sonag Company, Inc., a general contractor located in Milwaukee, Wisconsin. *Id.* ¶ 25. As a Hispanic male, Mr. Ganos qualified as a disadvantaged individual for purposes of obtaining government set-aside contracts through the Small Business Act Section 8(a) Program. *Id.* When Sonag graduated from the program in May 2003, Mr. Ganos—with assistance from James Hubbell (a project manager for Sonag)—pursued a scheme that would allow him to continue to participate in and benefit from the program. *Id.* ¶¶ 25–26. They would accomplish this by recruiting persons who qualified as disadvantaged individuals to serve as purported owners of newly formed construction companies. *Id.* ¶ 26.

The first such company was Nuvo Construction, Inc. Mr. Ganos approached Jorge Lopez, a Sonag project manager, and asked him to become president of Nuvo. *Id.* ¶ 32. Mr. Lopez would have an 85% ownership interest in the company, with Mr. Ganos as the 15% minority owner and vice president/secretary. *Id.* ¶¶ 33–34. On behalf of Nuvo, in 2004, Mr. Lopez applied for and was accepted into the Section 8(a) program. *Id.* ¶¶ 34–35. While the program materials listed Mr. Lopez as Nuvo's

3

president, majority owner, and full-time manager, Mr. Hubbell managed the company's affairs. *See id.* ¶¶ 34–65. Indeed, Mr. Lopez lived in Minnesota for the bulk of the time he purportedly managed Nuvo, whose office was located in the Milwaukee office building owned by Mr. Ganos. *See id.* ¶¶ 40–51. From 2005 to 2015, Nuvo received a combined total of about $71 million in Section 8(a) set-aside contracts. *Id.* ¶ 66. Nuvo graduated from the program in September 2013. *Id.* ¶ 70.

Mr. Ganos and Mr. Hubbell also sought to benefit from the Service Disabled Veteran Owned Small Business program, a government program that grants set-aside contracts to qualified service-disabled veterans. *Id.* ¶ 7. Because neither qualified himself, the pair recruited Telemachos Agoudemos—a service-disabled veteran—to be president and majority owner of C3T, Inc. *Id.* ¶ 71. Mr. Hubbell was to serve as vice president and minority owner. *Id.* ¶ 74. In April 2006, Mr. Hubbell registered C3T as a self-certified Service Disabled Veteran Owned Small Business, which allowed the company to bid on set-aside government contracts. *Id.* ¶ 75. Although Mr. Agoudemos was listed as the owner of C3T, the company was in fact controlled by Mr. Ganos and Mr. Hubbell. *See id.* ¶¶ 71–98. Like Sonag and Nuvo, C3T was located in Mr. Ganos's Milwaukee office building. *See id.* ¶ 72. From 2006 through 2016, C3T received about $197 million in Service Disabled Veteran Owned Small Business set-aside contracts. *Id.* ¶ 99. As of July 2016, the company was still participating in the Service Disabled Veteran Owned Small Business Program and was still being awarded government set-aside contracts. *Id.* ¶ 102.

4

After Nuvo graduated from the Section 8(a) program, Mr. Ganos and Mr. Hubbell attempted to establish a new minority-owned business to obtain government Section 8(a) set-aside contracts. *See id.* ¶ 105. They recruited Odessa Millan, an Asian-Pacific American woman who meets the social and economic requirements to be a Section 8(a) participant (and a former project manager for C3T), to be president and purported owner of Pagasa Construction Company, Inc. *Id.* ¶ 106. To establish the required work history to gain Section 8(a) status, Sonag, Nuvo, and C3T listed and paid Pagasa for subcontractor work that the three companies performed themselves. *See id.* ¶¶ 111–15. Pagasa obtained its Section 8(a) certification in September 2015; however, as of July 2016 it had not been awarded any Section 8(a) set-aside federal government contracts. *Id.* ¶ 117. In Fall 2015, Pagasa moved into the Milwaukee office building owned by Mr. Ganos and housing Sonag, Nuvo, and C3T. *Id.* ¶ 119.

In addition to office space, the companies also shared an accountant: Lori Michaud. Ms. Michaud had previously worked as the accounting manager for Sonag. *See id.* ¶ 125. She left in 2010 to form her own accounting firm, LJM Accounting Services, Inc. *Id.* Sonag, Nuvo, C3T, and Pagasa are her only clients. *See id.* ¶ 129. Ms. Michaud "has control over the entire general ledger function and the financial accounts for all of the referenced companies." *Id.* ¶ 127. She had work space within Mr. Ganos's Milwaukee office building, *id.* ¶ 122, and also worked out of her home office in Menomonee Falls, *id.* ¶ 129.

5

The affidavits were based largely on information provided by a confidential source—referred therein as CS-1—an individual who had been employed by Sonag and Nuvo for about fourteen years. *Id.* ¶ 31. According to the affidavits, CS-1 approached law enforcement in 2014 "with information regarding inappropriate affiliation between Sonag, Nuvo, C3T and Pagasa." *Id.* SA Humeniak also relied on a number of business records, interviews of government officials and a former Nuvo employee other than CS-1, and surveillance of the Milwaukee office building. *See generally id.* ¶¶ 25–129.

On July 29, 2016—the same day SA Humeniak submitted her warrant applications—the undersigned magistrate judge approved warrants to search the Milwaukee office building and the Menomonee Falls home office. *See* Search and Seizure Warrant, ECF No. 2 in Case Nos. 16-MJ-98 and 16-MJ-99. Law enforcement agents executed the warrants on August 3, 2016. *Id.* at 2. They recovered a number of items from the office building but did not seize anything from the home office. *See id.*

On April 3, 2018, a grand jury returned a twenty-two-count indictment charging Brian L. Ganos, Mark F. Spindler, and Sonag Company, Inc., with conspiracy to engage in mail and wire fraud, wire fraud, mail fraud, conspiracy to engage in money laundering, money laundering, and unlawful financial transactions. Indictment, ECF No. 1. The grand jury returned a superseding indictment on May 1, 2018, that added Nuvo Construction Company, Inc. as a defendant, two additional mail fraud counts against Mr. Ganos, and a misprision of

6

felony count against Mr. Spindler. *See* Superseding Indictment 1–14, 23, ECF No. 25. The matter is assigned to United States District Judge Pamela Pepper for trial and to this Court for resolving pretrial motions. *See* 28 U.S.C. § 636(b)(1). It has been declared complex, *see* Arraignment and Plea Minutes, ECF No. 14, and no trial date has been set.

On August 24, 2018, Mr. Ganos moved to suppress all evidence obtained from the execution of the search warrants and requested an evidentiary hearing on his motion. *See* Brian Ganos' Motion to Suppress Evidence (Evidentiary Hearing Requested), ECF No. 39. Sonag has been permitted to join the Motion. *See* Text Only Order, ECF No. 75. The United States opposed the request for an evidentiary hearing, *see* United States' Opposition to Request for Evidentiary Hearing, ECF No. 49, and has submitted a substantive response to the Motion to Suppress, *see* United States' Response to Ganos's Motion to Suppress Evidence, ECF No. 60. Mr. Ganos submitted a reply brief on September 17, 2018. *See* Brian Ganos's Statement Pursuant to Local Rule 12(c), ECF No. 64. Later that day, the Court denied the request for an evidentiary hearing. *See* Court Minutes for Telephonic Motion Hearing, ECF No. 68. No party has objected to that order, and the time to do so has now expired. *See* § 636(b)(1), Fed. R. Crim. P. 59(a), and E.D. Wis. Gen. L. R. 72(c).

**II. Discussion**

Mr. Ganos argues that the affidavits submitted in support of the applications for warrants to search the Milwaukee office building and the Menomonee Falls home office "lack probable cause because they do not provide the Magistrate Judge

7

with sufficient information to assess the credibility of the government's confidential informant, CS-1." Def.'s Mot. 1. The United States maintains that Mr. Ganos lacks standing to challenge the search warrants, the affidavits sufficiently established the reliability of the information provided by CS-1, the affidavits were otherwise supported by probable cause, and the executing officers relied on the warrants in good faith.

### A. Whether Mr. Ganos has "standing" to challenge the search of the office building and the home office

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "[T]he rights guaranteed by the Fourth Amendment are personal, and may not be asserted vicariously." *United States v. Price*, 54 F.3d 342, 345 (7th Cir. 1995) (citing *Rakas v. Illinois*, 439 U.S. 128 (1978)). "To challenge evidence obtained in an unlawful search, a person must show that he had a 'legitimate expectation of privacy' in the area searched." *United States v. Rodriguez-Escalera*, 884 F.3d 661, 667 (7th Cir. 2018) (citing *Rakas*, 439 U.S. at 143, 149).

Mr. Ganos has not shown a basis for challenging the search of the Menomonee Falls home office. As alleged in the affidavit, that residence belonged to Ms. Michaud, an accountant who provided services for Sonag, Nuvo, C3T, and Pagasa. Def.'s Mot., Ex. B ¶¶ 10(B), 122, 129. Mr. Ganos did not have a legitimate expectation of privacy in the home office of his accountant. Moreover, this challenge

8

appears to be moot, as agents did not seize any evidence from the residence. *See* Search and Seizure Warrant, ECF No. 2 at 2 in Case No. 16-MJ-98.

Mr. Ganos also has not sufficiently demonstrated that he had a legitimate expectation of privacy in the entire Milwaukee office building. The government does not dispute that Mr. Ganos owned that building. But, as alleged in the affidavits, the building housed several businesses and was divided into separate offices and warehouses. Def.'s Mot., Ex. A ¶ 10(A). Mr. Ganos solely owned one of those businesses (Sonag) and was the minority owner of another (Nuvo). *See id.* ¶ 8(A). However, he denied having any involvement with C3T or Pagasa. *See* U.S.'s Resp. 5–6. Even though "ownership alone does not justify a reasonable expectation of privacy," *Shamaeizadeh v. Cunigan*, 338 F.3d 535, 544 (6th Cir. 2003), Mr. Ganos's interests in Sonag and Nuvo are sufficient to establish standing. But because Mr. Ganos denies any involvement with C3T or Pagasa, he does not have standing to challenge the searches of those offices. *See United States v. Bentley*, 825 F.2d 1104, 1109 (7th Cir. 1987) (suggesting that an employee has no privacy interest in files maintained by others).[1]

### B. Whether the search-warrant affidavits were supported by probable cause

#### 1. Legal standards

"When an affidavit is the only evidence presented to a judge in support of a search warrant, the validity of the warrant rests solely on the strength of the

---

[1] It appears that nothing was seized from Ms. Michaud's space at the Milwaukee office building. *See* Search and Seizure Warrant, ECF No. 2 at 3 in Case No. 16-MJ-99.

9

affidavit." *United States v. Peck*, 317 F.3d 754, 755–56 (7th Cir. 2003) (citing *United States v. Roth*, 391 F.2d 507, 509 (7th Cir. 1967)). "A search warrant affidavit establishes probable cause when it 'sets forth facts sufficient to induce a reasonable prudent person to believe that a search thereof will uncover evidence of a crime.'" *United States v. Jones*, 208 F.3d 603, 608 (7th Cir. 2000) (quoting *United States v. McNeese*, 901 F.2d 585, 592 (7th Cir. 1990)).

In deciding whether an affidavit establishes probable cause, "courts must use the flexible totality-of-the-circumstances standard set forth in *Illinois v. Gates*, 462 U.S. 213, 238 . . . (1983)." *McNeese*, 901 F.2d at 592. Applying the totality-of-the-circumstances standard, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238.

"[P]robable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts." *Id.* at 232. Thus, "[i]n dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Brinegar v. United States,* 338 U.S. 160, 175 (1949). "Probable cause denotes more than mere suspicion, but does not require certainty." *United States v. Anton*, 633 F.2d 1252, 1254 (7th Cir. 1980).

10

The court's duty in reviewing a search warrant and its supporting materials is limited to ensuring "that the magistrate had a 'substantial basis for . . . [concluding]' that probable cause existed." *Gates*, 462 U.S. at 238–39 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). In other words,

> a magistrate's determination of probable cause is to be "given considerable weight and should be overruled only when the supporting affidavit, read as a whole in a realistic and common sense manner, does not allege specific facts and circumstances from which the magistrate could reasonably conclude that the items sought to be seized are associated with the crime and located in the place indicated."

*United States v. Pritchard*, 745 F.2d 1112, 1120 (7th Cir. 1984) (quoting *United States v. Rambis*, 686 F.2d 620, 622 (7th Cir. 1982)). Even "doubtful cases should be resolved in favor of upholding the warrant." *Rambis*, 686 F.2d at 622 (citations omitted).

Where, as here, an affidavit submitted in support of a search warrant relies on information supplied by an informant, the totality-of-the-circumstances inquiry generally focuses on the informant's "reliability, veracity and basis of knowledge." *United States v. Johnson*, 289 F.3d 1034, 1038–39 (7th Cir. 2002). This inquiry involves balancing several factors, including: (1) the degree of police corroboration of the informant's statements; (2) the extent to which the information is based on the informant's personal observations; (3) the amount of detail provided; (4) the interval of time between the events and the application for the search warrant; and (5) whether the informant personally appeared before the warrant-issuing judge to present the affidavit or testimony. *See United States v. Koerth*, 312 F.3d 862, 866 (7th Cir. 2002) (citations omitted). "No one factor is dispositive, so a deficiency in

11

some areas can be compensated by a stronger showing in others." *United States v. Bell*, 585 F.3d 1045, 1049 (7th Cir. 2009) (citing *United States v. Taylor*, 471 F.3d 832, 840 (7th Cir. 2006)).

### 2. Legal analysis

The first three factors strongly suggest that the information provided by CS-1 was reliable. The affidavit indicated that CS-1 "had been employed by Sonag and Nuvo for approximately 14 years, which gave him/her an intimate knowledge of specific contract details, office culture, and financial transactions." Def.'s Mot., Ex. A ¶ 31. Thus, CS-1 had an extensive history with Mr. Ganos. The information provided by CS-1 was highly detailed and suggested personal involvement by CS-1, describing that Mr. Ganos sought out Mr. Lopez to gain Section 8(a) status for Nuvo; that Mr. Hubbell and not Mr. Lopez actually managed Nuvo; that Mr. Ganos provided the financial backing for Nuvo; that Mr. Lopez moved to Minnesota and had limited involvement in Nuvo; that Mr. Ganos and Mr. Hubbell invoiced work Sonag, Nuvo, C3T, and others performed on their personal residences through government contracts; that Mr. Ganos and Mr. Hubbell sought out Mr. Agoudemos to gain service-disabled-veteran status for C3T; that Mr. Agoudemos did not actually run C3T's day-to-day affairs; that Mr. Hubbell was removed from C3T's payroll, business structure, and office space after its eligibility was suspended to create the impression that he had no involvement in the company; that Mr. Hubbell nevertheless continued to control C3T; that Mr. Ganos sought out Ms. Millan to gain Section 8(a) status for Pagasa; that Mr. Ganos and Mr. Hubbell were in fact in

12

control of Pagasa; that Mr. Hubbell sought to establish a sufficient work history for Pagasa so it could acquire Section 8(a) status; that Pagasa never actually performed any of the work paid for by Ganos-affiliated companies; that Ms. Michaud provided accounting services for Sonag, Nuvo, and C3T; and that Ms. Michaud played accounting gymnastics with the companies' finances. *See id.* ¶¶ 32, 38, 40, 63, 71, 82, 92, 93, 105–06, 111, 116, 122, 127–28. Law enforcement independently corroborated most of this information. *See id.* ¶¶ 25, 33, 39, 41–48, 53, 59–62, 64–65, 72–73, 74, 77–79, 83–85, 92, 94; 107, 110, 112–14, 116, 123–26, 128, 129.

The last two factors weigh slightly against the reliability of CS-1's information. The affidavit indicates that CS-1 approached law enforcement in 2014, *id.* ¶ 31, and the government avers that s/he met with law enforcement only three times: in December 2013, February 2014, and March 2014, *see* U.S.'s Resp. 14. SA Humeniak applied for the search warrant in July 2016, more than two years after law enforcement's last interaction with CS-1. Moreover, this Court authorized the warrant at issue, and CS-1 did not personally appear before me for that signing. These deficiencies, however, are easily overcome by the strong showing in other areas, namely the amount of detail provided and the level of police corroboration.

Mr. Ganos's specific criticisms of CS-1's reliability are, in the Court's view, unavailing. *First*, Mr. Ganos complains that the affidavit obfuscated CS-1's role within Sonag and Nuvo. *See* Def.'s Mot. 4–5. This detail, however, was not critical to the probable-cause determination. The affidavit sufficiently established that CS-1 had access to very specific information about Mr. Ganos's (and Mr. Hubbell's)

13

business ventures, *see, e.g.*, Def.'s Mot., Ex. A ¶ 31, and that law enforcement corroborated enough details to ensure its reliability.

*Second*, Mr. Ganos asserts that the affidavit presented as fact CS-1's statements, when s/he expressed them as beliefs or opinions during interviews with law enforcement. *See* Def.'s Mot. 6–7. This error was immaterial. Probable cause would still exist if the affidavit had included such qualifying language. *See United States v. Harris*, 464 F.3d 733, 738 (7th Cir. 2006) (holding that, when a defendant alleges that a warrant affidavit omitted material information, reviewing courts must examine the affidavit, incorporating omitted facts, and determine whether probable cause existed).

*Finally*, Mr. Ganos suggests that the government unlawfully directed CS-1 to obtain confidential records from the businesses in question. *See* Def.'s Mot. 7–9. He does not, however, offer anything beyond pure speculation to support this theory. Mr. Ganos therefore has not met his burden of demonstrating that CS-1 was "acting as an instrument or agent of the government" when s/he obtained those records. *See United States v. Shahid*, 117 F.3d 322, 325 (7th Cir. 1997) (citations omitted). Given the factors identified above, such speculation does not seriously undermine CS-1's credibility.

Overall, the issuing magistrate judge had a substantial basis for concluding that probable cause existed to search the Milwaukee office building. The affidavit submitted in support of the search-warrant application set forth sufficient facts to induce a reasonable person to conclude that Mr. Ganos and Mr. Hubbell had

14

engaged in an unlawful scheme to obtain government set-aside contracts for which they were not eligible. Specifically, the affidavit established a significant connection between Sonag, Nuvo, C3T, and Pagasa and detailed the steps Mr. Ganos and Mr. Hubbell took to illegitimately qualify for the Section 8(a) and the Service Disabled Veteran Owned Small Business programs. The totality of circumstances show that SA Humeniak reasonably relied on information provided by CS-1, as well as several other sources, when seeking the warrant. Accordingly, there was a fair probability that evidence relating to the scheme would be found in the Milwaukee office building shared by the four Ganos-affiliated businesses.

### C. Whether the good-faith exception applies

Even if the search-warrant affidavits failed to state probable cause, suppression would not be an appropriate remedy here because the executing officers relied on the warrants in good faith. *See United States v. Leon*, 468 U.S. 897 (1984). "An officer's decision to obtain a warrant is *prima facie* evidence that the officer was acting in good faith." *United States v. Reed*, 744 F.3d 519, 522 (7th Cir. 2014) (citing *Leon*, 468 U.S. at 921; *United States v. Miller*, 673 F.3d 688, 693 (7th Cir. 2012)). Mr. Ganos has not rebutted this presumption. The Court already has determined that SA Humeniak was not "dishonest or reckless in preparing the affidavit," *Reed*, 744 F.3d at 522. *See* Mot. Hr'g Mins. 2. And Mr. Ganos does not argue that the issuing magistrate judge "abandoned the detached and neutral judicial role" or that "the warrant was so lacking in probable cause that the officer could not reasonably rely on the judge's issuance of it." *Reed*, 744 F.3d at 522 (citations omitted).

15

### III. Conclusion

Accordingly, for all the foregoing reasons, the Court will recommend that Mr. Ganos's Motion to Suppress be denied.

**NOW, THEREFORE, IT IS HEREBY RECOMMENDED** that Brian Ganos' Motion to Suppress Evidence, ECF No. 39, be **DENIED**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(B) and (C), Fed. R. Crim. P. 59(b), and E.D. Wis. Gen. L. R. 72(c), whereby written objections to any recommendation herein, or part thereof, may be filed within fourteen days of service of this Report and Recommendation. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Failure to file a timely objection with Judge Pepper shall result in a waiver of your right to appeal. If no response or reply will be filed, please notify Judge Pepper in writing.

Dated at Milwaukee, Wisconsin, this 1st day of November, 2018.

**BY THE COURT:**

*s/ David E. Jones*
DAVID E. JONES
United States Magistrate Judge