# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**UNITED STATES OF AMERICA,**

      Plaintiff,

      v.                                           **Case No. 18-CR-62**

**BRIAN L. GANOS,**
**MARK F. SPINDLER,**
**SONAG COMPANY, INC.,** and
**NUVO CONSTRUCTION COMPANY, INC.,**

      Defendants.

---

## ORDER DENYING DEFENDANT'S MOTION TO STRIKE JURY VENIRE AND REQUEST FOR EVIDENTIARY HEARING, ECF NO. 104

---

In this criminal case, the government alleges that Brian L. Ganos conspired with his solely owned corporation (Sonag Company, Inc.) and other individuals and entities (including his outside accountant, Mark F. Spindler) to engage in a scheme to obtain government set-aside contracts for which they were not entitled. *See* Superseding Indictment, ECF No. 25. The matter is assigned to United States District Judge Pamela Pepper for trial and to this Court for resolving pretrial motions. *See* 28 U.S.C. § 636(b)(1). It has been declared complex, *see* Arraignment and Plea Minutes, ECF No. 14, and trial is set for July 8, 2019, *see* Court Minutes and Order, ECF No. 88.

On January 24, 2019, Sonag filed a motion to strike the entire jury venire in the Eastern District of Wisconsin's Milwaukee Division, arguing that the District's current jury plan systematically underrepresents minority groups. *See* Defendant's Motion to Strike Jury Venire and Request for Evidentiary Hearing, ECF No. 104.[1] Sonag requests an evidentiary hearing on its Motion and has submitted an offer of proof in support thereof, as well as affidavits from two potential expert witnesses, *see* Kenneth Strasma Affidavit, ECF No. 105; Kenneth R. Mayer, Ph.D. Affidavit, ECF No. 106. The government filed its opposition to the Motion on January 28, 2019. *See* United States' Response, ECF No. 107. Judge Pepper has referred the Motion to this Court for disposition. *See* 28 U.S.C. § 636(b)(1)(A).

Because Sonag has failed to make out a prima facie case for challenging this District's jury-selection process, the Court will deny his Motion and his Request for a hearing.

## I.     Background

In accordance with the Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861–1878, the Eastern District of Wisconsin has devised and placed into operation a written plan for random selection of grand and petit jurors. The District's Jury Plan was last revised and adopted in January 2017. *See* https://www.wied.uscourts.gov/jury-plan-revised-january-2017 (last visited Mar. 12, 2019).

---

[1] Mr. Ganos and Mr. Spindler have joined Sonag's Motion. *See* Def.'s Mot. 15.

Pursuant to the Plan, the District has created a Master Jury Wheel for each division within the district (i.e., the Milwaukee Division and the Green Bay Division) using the voter records of each county within the district. *Id.* at 1–2.[2] The Plan requires that "[t]he number of names selected from each county should be substantially in the same proportion to the total number selected from the division as the number of voters in the division." *Id.* at 2. That is, a county with 20% of the division's voters should supply approximately 20% of the names selected from the entire division. The number of names initially deposited into the Master Jury Wheel was 3,000 for the Green Bay Division and 10,000 for the Milwaukee Division. *Id.* at 3. According to the Plan, "[e]ach Master Jury Wheel will be emptied and refilled every two years." *Id.*

At periodic intervals, names are randomly drawn from the Master Jury Wheel "for the purpose of summoning persons to serve as grand or petit jurors." *Id.* The number of names drawn is determined by the Clerk of Court based on the District's needs. The District sends a Juror Qualification Summons/Questionnaire to each person whose name is randomly drawn from the Master Jury Wheel. Certain individuals, described in the Plan, may be disqualified, excused, or exempt from jury service. *See id.* at 3–4. "The names of all persons who are periodically

---

[2] The Milwaukee Division consists of: Dodge, Fond du Lac, Green Lake, Kenosha, Marquette, Milwaukee, Ozaukee, Racine, Sheboygan, Walworth, Washington, and Waukesha counties.

The Green Bay Division consists of: Brown, Calumet, Door, Florence, Forest, Kewaunee, Langlade, Manitowoc, Marinette, Menominee, Oconto, Outagamie, Shawano, Waupaca, Waushara, and Winnebago counties.

drawn from the respective Master Jury Wheel, who are not disqualified, exempt, or excused pursuant to this plan, will be placed in the appropriate division's qualified jury pool." *Id.* at 5. Petit jurors and grand jurors are randomly selected, when needed, from the appropriate Qualified Jury Pool. *Id.* 5–6.

## II.     Discussion

Sonag argues that the Eastern District of Wisconsin's 2017 Jury Plan results in a Master Jury Wheel and Qualified Jury Pool that systematically underrepresents minority groups in violation of the Fifth and Sixth Amendments to the United States Constitution and the Jury Selection and Service Act of 1968. *See* Def.'s Mot. p. 1. The company requests that the Court enter an order striking the entire jury venire in the Milwaukee Division and stay the jury trial in this matter until an adequately represented Master Jury Wheel and Qualified Jury Pool are assembled. *See id.* p. 14.

### A.  Fair cross-section claim

Under the Sixth Amendment, a defendant in a criminal prosecution has the right to be tried "by an impartial jury of the State and district wherein the crime shall have been committed." U.S. Const. amend. VI. The Supreme Court has construed this constitutional provision to require that "the venire of petit jurors be chosen from a fair cross-section of the community." *United States v. Raszkiewicz*, 169 F.3d 459, 462 (7th Cir. 1999) (citing *Taylor v. Louisiana*, 419 U.S. 522, 530 (1975)). "The jury must be chosen from a source which is representative of the community, but the Constitution does not require this to ensure representative

4

juries, but rather impartial juries." *Raszkiewicz*, 169 F.3d at 462 (citing *United States v. Ashley*, 54 F.3d 311, 313 (7th Cir. 1995)). Accordingly, "there is no requirement that a venire or a jury mirror the general population." *Raszkiewicz*, 169 F.3d at 462 (citing *United States v. Duff*, 76 F.3d 122, 124 (7th Cir. 1996)). Likewise, "[d]efendants are not entitled to a jury of any particular composition, . . . so long as there is a fair process which generates an impartial jury." *Raszkiewicz*, 169 F.3d at 462.

In *Duren v. Missouri*, the Supreme Court established the framework for addressing a fair cross-section challenge:

> In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

439 U.S. 357, 364 (1979). "If the defendant establishes these elements, the government must show that those aspects of the jury selection process which result in the disproportionate exclusion of a distinctive group manifestly advance an overriding, significant government interest." *Raszkiewicz*, 169 F.3d at 463 (citing *Ashley*, 54 F.3d at 313).[3]

---

[3] A fair cross-section claim under the Jury Selection and Service Act is analyzed the same as a Sixth Amendment fair cross-section claim. *See Raszkiewicz*, 169 F.3d at 462 n.1 (citing *United States v. Allen*, 160 F.3d 1096, 1102 (6th Cir. 1998); *United States v. Sanchez*, 156 F.3d 875, 879 & n.3 (8th Cir. 1998)).

### 1. Distinctive group

"Whether or not a class of persons is a sufficiently distinctive group to be cognizable for jury representativeness purposes is a question of fact." *Raszkiewicz*, 169 F.3d at 463. To show that a group is distinctive under the first prong of the *Duren* test, the defendant must establish

> (1) that the group is defined and limited by some factor ([e.g.], that the group has a definite composition such as by race or sex); (2) that a common thread or basic similarity in attitude, ideas, or experience runs through the group; and (3) that there is a community of interests among members of the group such that the group's interest cannot be adequately represented if the group is excluded from the jury selection process.

*Id.* (quoting *Willis v. Zant*, 720 F.2d 1212, 1216 (11th Cir. 1983)). "The test is not to be applied mechanically but must be used with common sense in light of the main purpose of the fair cross-section requirement, *viz.* to provide an impartial jury." *Raszkiewicz*, 169 F.3d at 463 (citing *Ashley*, 54 F.3d at 313).

Here, Sonag first maintains that the District's current Jury Plan underrepresents four separate groups: voting-age citizens of African descent, voting-age citizens of Hispanic descent, voting-age citizens of Asian or Pacific Island descent, and voting-age Native American citizens. *See* Def.'s Mot. p. 1, ¶ 17. Individually, each of these four groups may constitute cognizable distinctive groups under *Duren*. *See, e.g.*, *Ashley*, 54 F.3d at 313 ("Certainly, blacks constitute the sort of group contemplated by the 'distinctive member of the community' part of the *Duren* test."). But Sonag has not provided statistical evidence showing that any of

6

these groups are underrepresented in the Master Jury Wheel or the Qualified Jury

Pool. *See* Def.'s Mot. ¶¶ 4–11.[4]

Sonag also maintains that together, those groups "are one distinctive and

cognizable group in the community: . . . 'minorities' or 'people of color.'" Def.'s Mot.

¶ 17. In fact, this appears to be Sonag's principal argument, as its offer of proof

focuses exclusively on voting-age minorities in the aggregate. *See* Mayer Aff. ¶ 3

(applying statistical analysis to "voting-age citizens of the Milwaukee Division who

are members of racial minority groups or Hispanic"). Sonag has not, however,

provided any authority for its argument that "minorities" or "people of color" should

be recognized as a single group for purposes of the fair cross-section requirement.

Courts that have considered this argument have consistently rejected it. *See Prince*

*v. Parke*, 907 F. Supp. 1243, 1247 (N.D. Ind. 1995) ("This court does not understand

the requirement of a distinctive group under *Duren* to allow various groups to be

'lumped' together into one distinctive group called 'minorities.'"); *United States v.*

*Luong*, 255 F. Supp. 2d 1123, 1127 (E.D. Cal. 2003) ("[T]he Ninth Circuit has

rejected the theory that all non-white groups can be combined to form a single

'distinctive' group for the purpose of a jury selection challenge."); *United States v.*

*Purdy*, 946 F. Supp. 1094, 1100 (D. Ct. 1996) (declining to combine Blacks and

---

[4] Sonag did present some data about African Americans and Hispanics. *See* Def.'s
Mot. ¶¶ 6–7. However, this statistical evidence is inconsequential as it is limited to
Milwaukee County and does not account for citizenship or voting status. *See United
States v. Alanis*, 265 F.3d 576, 583–84 (7th Cir. 2001) (affirming the denial of a post-
trial fair cross-section claim where the defendant failed to present statistical
evidence about the community from which the venire was drawn and instead
focused solely on the county in which the district court was located).

7

Hispanics into a single group); *Ahmed v. Houk*, Case No. 2:07-cv-658, 2014 U.S. Dist. LEXIS 81971, at *308 (S.D. Ohio June 16, 2014) ("'Non-whites' has never been recognized as a 'distinctive group' in the community.").

Sonag not only lacks caselaw support, it has also failed to offer any "defining qualities" of minorities or people of color as a whole that would support their recognition by the population at large as a distinctive group in the community. *See Raszkiewicz*, 169 F.3d at 463–67 (rejecting fair cross-section claim because defendant failed to establish that "reservation Indians" were a distinctive part of the community). Accordingly, the company has not carried its burden on the first prong of the *Duren* test.

### 2. Underrepresentation

"The second element of the *Duren* test requires the defendant to show that the representation of the distinctive group on venires from which jury panels are selected is not fair and reasonable in relation to the number of such persons in the community." *Prince*, 907 F. Supp. at 1248 (citing *Duren*, 439 U.S. at 364). To meet this requirement, Sonag has presented the expert opinion of Kenneth R. Mayer, a political science professor at the University of Wisconsin, Madison. Professor Mayer opines, "to a reasonable degree of certainty in the field of quantitative political science," that since the year 2017, minorities have been underrepresented by 7.3% (17.6% expected representation – 10.3% of empaneled jurors) or 8.4% (17.6%

8

expected representation – 9.2% of those selected from voter lists[5]). Mayer Aff. ¶¶ 3, 11.

This statistical evidence is insufficient to satisfy Sonag's burden under the second prong of the *Duren* test. *First*, Professor Mayer's analysis compounds the flaw in Sonag's argument concerning the first *Duren* prong. He compares the expected percentage of minority representation on jury panels in the Milwaukee Division to the percentage of empaneled minorities and the percentage of minorities selected from the voter lists. But as explained above, minorities do not constitute a distinctive group under the *Duren* test. Thus, the absolute disparities[6] Professor Mayer has calculated are essentially meaningless to Sonag's fair cross-section claim—unsound inputs lead invariably to unsound conclusions.

*Second*, under Seventh Circuit law, an absolute disparity of 7.3% or 8.4% "alone is not enough to demonstrate unfair or unreasonable representation." *See United States v. Phillips*, 239 F.3d 829, 842 (7th Cir. 2001) (quoting *Ashley*, 54 F.3d at 315 (requiring a discrepancy of at least 10%)). Most other courts agree that such low disparities are not evidence of unconstitutional underrepresentation. *See Prince*, 907 F. Supp. at 1248–50 (discussing cases).

---

[5] It's unclear whether he is referring to the Master Jury Wheel or the Qualified Jury Pool.

[6] "Absolute disparity is defined as the difference between a group's representation in the population and its representation in the relevant jury pool." *United States v. Rioux*, 930 F. Supp. 1558, 1569 (D. Conn. 1995) (citing Peter A. Detre, Note, *A Proposal for Measuring Underrepresentation in the Composition of the Jury Wheel*, 103 Yale L.J. 1913, 1917 (1994)).

According to Sonag, the above disparities reflect the most conservative estimates of underrepresentation because they "assume that any person whose racial or Hispanic identity is uncertain is in fact a member of a minority group, not a non-Hispanic white." Def.'s Mot. ¶ 10(d). "When that assumption is removed . . . , the under-representation of all citizen, voting-age minorities rises to about 9.74%." *Id.* Maybe so. But this 9.74% figure is unsupported argument, as it does not appear in Professor Mayer's affidavit. *See* Mayer Aff. ¶¶ 7–8 (acknowledging reliance on the conservative geocoding and surname analysis). Moreover, although much closer to the threshold, that figure is still less than the 10% absolute disparity required by the Seventh Circuit. *See Ashley*, 54 F.3d at 313; *see also United States v. Butler*, 611 F.2d 1066, 1069–70 & n.9 (5th Cir. 1980) (finding 9.14% absolute disparity to be insufficient under *Duren*'s second prong because it was less than 10%).

Sonag argues that the Seventh Circuit's reliance on the absolute disparity test for analyzing fair cross-section claims is suspect in light of recent Supreme Court precedent. *See* Def.'s Mot. ¶ 18. Not so. In *Berghuis v. Smith*—a federal habeas action under 28 U.S.C. § 2254—the respondent asked the Supreme Court "to 'adopt the absolute-disparity standard for measuring fair and reasonable representation' and to 'requir[e] proof that the absolute disparity exceeds 10%' to make out a prima facie fair-cross-section violation." 559 U.S. 314, 330 n.4 (2010). The Court refused, explaining that "neither *Duren* nor any other decision of [that] Court specifies the method or test courts must use to measure the representation of distinctive groups in jury pools." *Berghuis*, 559 U.S. at 329. The Court also listed

10

three methods used by lower courts—absolute disparity, comparative disparity, and standard deviation—noting that "[e]ach test is imperfect." *Id.* Ultimately, the Court determined that it did not need "to take sides . . . on the method or methods by which underrepresentation is appropriately measured" because the underlying state-court decision at issue focused on the third prong of the *Duren* test. *See id.* at 329–30.

Because the Supreme Court in *Berghuis* did not need to reach the issue, lower courts remain free to choose the appropriate methodology for analyzing the second prong of fair cross-section claims. Sonag cites several Seventh Circuit decisions issued since *Berghuis* to suggest that "[c]ourts likely no longer can use absolute disparity as the sole measure of the second *Duren* factor." Def.'s Mot. ¶ 18 (collecting cases). Significantly, the second *Duren* prong was not at issue in any of those cases. *Ashley* therefore is still good law unless and until the Seventh Circuit or the Supreme Court expressly says otherwise.

Furthermore, Sonag has not presented any statistical evidence derived from an alternative methodology. The company indicates that, if granted a hearing, Professor Mayer "will present evidence on the comparative disparity and standard deviation methods." Def.'s Mot. ¶ 10(e). A promise of future evidence is not sufficient to establish a prima facie case.

### 3. Systematic exclusion

Under the third *Duren* prong, the defendant must demonstrate that the alleged underrepresentation is "due to systematic exclusion of the group in the jury-

11

selection process." *United States v. Willis*, 868 F.3d 549, 555 (7th Cir. 2017) (citing *Alanis*, 265 F.3d at 583). "*Duren* defined 'systematic' as 'inherent in the particular jury-selection process utilized.'" *Ashley*, 54 F.3d at 314 (quoting *Duren*, 439 U.S. at 366).

Sonag's main complaint is that the District's reliance solely on actual voters systematically excludes minorities from the jury-selection process. *See* Def.'s Mot. ¶¶ 1–2. According to Sonag, the underrepresentation of minorities is exacerbated by apportioning the Master Jury Wheel by county voter turnout (which causes overrepresentation of jurors from counties with high voter turnout percentages, which in turn are heavily white, affluent counties); an opt-out provision for single parents; and the number of contacts required with government employees. *See id.* ¶¶ 2–3. Sonag also points to Wisconsin's recently enacted voter identification law, 2011 Wisconsin Act 23—which has been criticized for suppressing poor and minority voter turnout—as another factor that contributes to the racial and ethnic disparities resulting from using actual voters. *See id.* ¶ 16.

Nevertheless, the Jury Selection and Service Act explicitly endorses the use of actual voter lists as a primary source of names of prospective jurors. *See* 28 U.S.C. § 1863(b)(2). Likewise, the Seventh Circuit and other courts have consistently held that using such lists does not violate *Duren*'s third prong. *See* U.S.'s Resp. 6–7 (collecting cases).

Sonag has, however, made interesting points concerning the apportionment of jurors by voter turnout and the effects of the state's voter ID law. The

12

combination of those factors may, in a future case, be sufficient to satisfy *Duren*'s third prong. Given Sonag's failure to meet its burden on the first two prongs of the *Duren* test, the Court does not need to decide if those factors are sufficient here. Accordingly, the Court finds that Sonag has failed to establish a prima facie violation of the fair cross-section requirement and will therefore order denial of this claim.

### B. Equal-protection claim

"Purposeful racial discrimination in selection of the venire violates a defendant's right to equal protection." *Batson v. Kentucky*, 476 U.S. 79, 86 (1986). To establish a prima facie case that a jury-selection process violates the equal-protection clause, a defendant must show (1) that he belongs to a group "that is a recognizable, distinct class, singled out for different treatment under the laws"; (2) that there has been "substantial underrepresentation" of that group "over a significant period of time"; and (3) discriminatory intent. *Castaneda v. Partida*, 430 U.S. 482, 494 (1977); *see also Prince*, 907 F. Supp. at 1252–53.

"Although the elements of a *prima facie* case for an equal protection claim in the context of jury selection resemble those of a fair cross-section claim under *Duren*," the two claims serve different purposes. *See Prince*, 907 F. Supp. at 1252 (citing *Duren*, 439 U.S. at 368 n.26; *United States v. Grisham*, 63 F.3d 1074, 1081 (11th Cir. 1995)). "[W]hereas the inquiry in a fair cross-section claim focuses on the representativeness of the jury venire, the focus of an equal protection claim is whether members of a discrete group have been *intentionally* denied the

13

opportunity to serve on a jury." *Prince*, 907 F. Supp. at 1253 (quoting *Grisham*, 63 F.3d at 1081).

For all intents and purposes, the first two prongs of an equal-protection claim concerning the jury-selection process mirror the first two prongs of a fair cross-section claim. *See Duren*, 439 U.S. at 370–72 (Rehnquist, J., dissenting); *see also Rioux*, 930 F. Supp. at 1582 (noting that the *Castaneda* equal-protection test "is very similar to the *Duren* test"). For the reasons discussed above, the Court finds that Sonag has not met its burden of demonstrating that the company belongs to a distinct group or that there has been substantial underrepresentation of that particular group over a significant period of period. As such, Sonag's equal-protection claim must also fail.

To show discriminatory intent under the third prong, Sonag contrasts the District's current Jury Plan with the plan in place from January 2009 to February 2017. According to Sonag, the previous jury plan used registered voters as the source list from which to draw potential jurors from Milwaukee County—the District's largest and most diverse county—and actual voters for the other eleven counties. Def.'s Mot. ¶ 12. The previous plan, as described by Sonag, also explicitly authorized the Clerk to draw additional names for the Master Jury Wheel "from the voter records of election districts known to contain greater numbers of racial minorities than the general population." *Id.* The current Plan uses actual voters for all counties and does not, in Sonag's view, permit such "oversampling." Sonag

14

maintains that discriminatory intent can be inferred from those changes. *See* Def.'s Mot. ¶¶ 12–24.

Again, Sonag raises some interesting points about the District's current Jury Plan. Perhaps it could be better. But it is ultimately unpersuasive to argue that the District's use of actual voter lists, which is a permissible approach, evinces discriminatory intent. Regardless, the Court need not reach this issue due to Sonag's failure to meet the first two prongs of the *Castaneda* test.

## III. Conclusion

For all the foregoing reasons, the Court will deny Sonag's Motion to Strike Jury Venire and Request for Evidentiary Hearing.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Defendant's Motion to Strike Jury Venire and Request for Evidentiary Hearing, ECF No. 104, is **DENIED**.

Your attention is directed to 28 U.S.C. § 636(b)(1)(A), Fed. R. Crim. P. 59(a), and E.D. Wis. Gen. L. R. 72(c), whereby written objections to any order herein, or part thereof, may be filed within fourteen days of service of this Order. Objections are to be filed in accordance with the Eastern District of Wisconsin's electronic case filing procedures. Failure to file a timely objection with Judge Pepper shall result in a waiver of a party's right to appeal. If no response or reply will be filed, please notify Judge Pepper in writing.

Dated at Milwaukee, Wisconsin, this 12th day of March, 2019.

BY THE COURT:

*s/ David E. Jones*

DAVID E. JONES
United States Magistrate Judge