UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

   *Plaintiff,*

 v.           Case No. 18–CR-62 (PP-DEJ)

BRIAN L. GANOS, SONAG COMPANY, INC.,
MARK F. SPINDLER, AND NUVO CONSTRUCTION CO., INC.

   *Defendants.*

**DEFENDANTS' REPLY IN SUPPORT OF
OBJECTIONS TO RECOMMENDATION
TO DENY MOTION TO STRIKE JURY VENIRE**

**I.**

**INTRODUCTION**

At bottom, the government's theme is that this Court should delay the day of reckoning: that there are procedural escape routes that will provide temporary refuge. Perhaps, it urges, the Seventh Circuit will ignore both the Supreme Court's decision in *Berghuis v. Smith*, 559 U.S. 314 (2010), and the en banc Ninth Circuit's conclusion that *Berghuis* ended exclusive reliance on the absolute disparity test; never mind the fact that the Seventh Circuit itself has not relied on its absolute disparity test in turning back fair cross-section challenges since

*Berghuis*. And perhaps, the government also beckons, an appellate court will blink away the reality that, in a pool of a fixed size, the over-representation of one group is the mirror image of under-representation of other groups. Or perhaps this Court can escape the judicially noticeable reality of significantly higher voter turnouts in November general elections in the affluent, whiter counties in the Milwaukee Division, that by design of this district's Jury Plan then overload the division's qualified jury pool with citizens of those counties—well beyond those counties' proportionate share of the voting-age citizens in the division. *See* FED. R. EVID. 201(b)(2) (judicial notice of adjudicative facts that are "not subject to reasonable dispute" because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

Maybe this theme of delay-and-deflect will work for now. But if by chance it does not in the end, this Court will have held a three-week trial for naught, assuming at least some convictions. If delay, denial of the obvious, and technical objections do not carry the day in the Seventh Circuit, the case will be back after trial for a hearing on the composition of the jury pool.

Of course, the delay may not be that long. If this Court ignores the issue now and assembles a jury panel for this trial, the motion to strike will be renewed if that panel reflects the demographics of the qualified panel from which it was drawn. The Court will have to decide then whether to proceed to trial by twice rejecting a fair cross-section and Fifth Amendment challenge.

The government simply is wrong about at least one controlling point. It claims that the "defendants laid out the best-case scenario they could prove at an evidentiary hearing." United States' Response at 1 (ECF No. 133). No; as the defendants have made quite clear, they did all that they were obliged to do: they laid out enough to warrant a hearing at which the Court might hear actual evidence, and then decide a motion on facts and law rather than on proffers.

This Court could make a more realistic, substantial, and farsighted choice than the government urges. Holding a hearing now will be more efficient than holding one after a trial. And it will have the added virtue of allowing the Court to consider substance, not just procedure and avoidance, in deciding whether this district meaningfully over-represents white citizens and under-represents everyone else in its system of selecting people for possible jury service.

II.

REPLY

A. *Distinctive Groups.*

In the end, the question of who is a "distinctive group" is legal, not factual. In deciding that legal issue, the defendants suggest that it would be useful to have a full factual record—one that includes cross-examination and probably competing experts—on just exactly what the demographics are of voting-age citizens both in the division and on the qualified jury panel.

Likewise, in the end, "under-representation" is a legal issue. By the time the parties get to briefing after a hearing, it is entirely possible that the status of absolute disparity, either as a rigid and exclusive test or as a factor among others, will be more clear than the government finds it today. Whether over-representation, the mirror image of under-representation, counts also is a legal question. Having a full factual record, not just competing narratives about what an evidentiary hearing might produce, also will be useful in deciding that legal question.

When defendants say "useful" here, they mean in deciding the substantial question of whether this district is violating systematically the Fifth and Sixth Amendments with its Jury Plan. If, instead, delaying arrival of the day when the Court must confront that unhappy possibility is the goal, as it is for the government, then defendants agree that it is more "useful" for the Court to conclude that defendants did not meet some procedural requirements to be heard. That will allow business as usual for months, at least, and leave truth-seeking stalled.

B. *Over-Representation Specifically.*

Even if the Court chooses postponement of reckoning, though, there is one bit of governmental overstatement of which the Court should be aware. The government asserts that, "Courts have thus consistently rejected the argument that overrepresentation of a group violates the fair cross-section

4
Case 2:18-cr-00062-PP    Filed 04/11/19    Page 4 of 6    Document 135

StrangBradley, LLC

requirement." ECF No. 133 at 9. That asserted consistency comes down to exactly one case from a district court on Long Island, *Kotler v. Woods*, 620 F. Supp.2d 366 (E.D.N.Y. 2009). ECF No. 133 at 9. The other cases the government cites stand for the proposition that whites are a distinctive group, which has nothing to do with the over-representation question at all. But in fairness to the government, there is one other case it could have cited. There also was the district judge in northern Alabama who, 34 years ago, saw no constitutional problem in overloading a jury pool with white men. *United States v. Underwood*, 617 F. Supp. 713, 718-20 (N. D. Ala. 1985). Whether two district judges cement the idea of courts acting "consistently" the defendants leave for this Court.

### III.
### CONCLUSION

Again, unless postponement of tough factual and legal questions is the goal in itself, Sonag, Ganos, and Spindler should have a hearing on their motion to strike the jury venire and their request for an evidentiary hearing. The government's response only underscores why the legal and factual issues need development that evidentiary hearings, not briefs alone, are designed to provide.

Dated at Madison, Wisconsin, April 11, 2019.

StrangBradley, LLC

StrangBradley, LLC

Respectfully submitted,

SONAG CO., INC., *Defendant*

*/s/ Dean A. Strang*

Dean A. Strang
*Wisconsin Bar No. 1009868*
John H. Bradley
*Wisconsin Bar No. 1053124*

STRANGBRADLEY, LLC
33 East Main Street, Suite 400
Madison, Wisconsin 53703
[608] 535-1550
dean@strangbradley.com