UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                               Case No. 18-cr-62-pp

BRIAN L. GANOS, SONAG COMPANY, INC.,
MARK SPINDLER, and NUVO CONSTRUCTION CO., INC.,

        Defendants.

## ORDER ADOPTING RECOMMENDATION (DKT. NO. 90), DENYING DEFENDANT SONAG'S MOTION TO DISMISS (DOC. NO. 36) AND DENYING DEFENDANT GANOS'S MOTION TO DISMISS (DOC. NO. 38)

Defendant Sonag, Inc. moved to dismiss Counts One (conspiracy to engage in mail and wire fraud) and Fourteen (conspiracy to engage in money laundering) of the superseding indictment under Rule 12(b)(3)(B).[1] Dkt. No. 36. Sonag argues that, as a solely-owned corporation, it cannot conspire with anyone if its sole owner, co-defendant Brian Ganos, did not do so. Id. at 1. Ganos moved to dismiss Count Fourteen, asserting that he could not conspire with his solely-owned corporation, Sonag. Dkt. No. 38. Magistrate Judge David Jones has recommended that the court deny the motions because the superseding indictment alleges that Ganos and Sonag each conspired with at least one other person or entity. Dkt. No. 90. The defendants have objected to

---

[1] Fed. R. Crim. P. 12(b)(3)(B) requires a party to challenge a defect in an indictment through a pretrial motion.

1

that recommendation. Dkt. Nos. 96, 99. The court adopts the recommendation and denies the motions to dismiss.

## I. BACKGROUND

### A. The Allegations

The superseding indictment alleges that between June 2004 and August 2016, Ganos was the sole owner and president of Sonag Co., a construction company. Dkt. No. 25 at ¶11. He also was "the purported" CEO and treasurer of a company called Sonag Ready Mix, LLC; Sonag (owned by Ganos) owned 50% of Sonag Ready Mix. Id. Nuvo Construction Co., Inc. was a construction company that "purported to provide ready-mix concrete." Id. at ¶16. A person referred to as "J.L." was "Nuvo's nominal president and 85% owner," and the superseding indictment alleges that Ganos "purported to own only 15% of Nuvo and to serve only as its vice president." Id. According to the superseding indictment, the Small Business Administration had certified Nuvo as a Small Disadvantaged Business, and it was certified by Milwaukee County as a disadvantaged business enterprise to provide ready-mix concrete. Id. Mark Spindler co-owned an accounting firm that "performed outside accounting services for Ganos-affiliated companies, including Sonag Company, Nuvo Construction Company, Inc., C3T, Inc. and Sonag Ready Mix." Id. at ¶12. (The superseding indictment identifies C3T as another construction company; an individual identified as "T.A." was C3T's "purported president and majority owner," and was certified under the Department of Veterans Affairs' Service-Disabled Veteran Small Business program. Id. at ¶17.)

Count One of the superseding indictment alleges that, in violation of 18 U.S.C. §1349, Ganos, Spindler, Sonag Co. and Nuvo conspired with each other to commit mail and wire fraud (18 U.S.C. §§1341 and 1343). Id. at ¶2. It alleges that they conspired

> to operate companies with straw owners who qualified as a socially and economically disadvantaged individual or as a service-disabled veteran, but who did not actually control the companies. The conspirators then fraudulently obtained small business program certifications as to the status of the companies and used those certifications to obtain over $200 million in federal, state, and local contract payments to which they were not entitled.

Id. Count One describes the straw owners (including "J.L." and "T.A."), as well as the small business certification programs, processes and requirements. Those details help one understand how the conspiracy allegedly worked but are not necessary to understand the defendants' arguments for dismissal.

Count Fourteen of the superseding indictment charges Ganos and Sonag with conspiring to launder money. Id. at 15, ¶¶45-46. It says that between 2007 and August 2016, Ganos and Sonag conspired with each other "and with other persons and entities known and unknown to the Grand Jury, including L.M. and Ganos-controlled entities Sonag I, LLC and Trinity Marketing Services, Inc." to

> knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, mail fraud and wire fraud in violation of Title 18, United States Code, Section 1341 and 1343, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and knowing that, while conducting and attempting to conduct such financial transactions, the property involved in the financial transactions represented the proceeds of

3

some form of unlawful activity, in violation of Title 18, United States
Code, Section 1956(a)(1)(B)(i).

Id. at ¶46. The count describes the mechanics of the alleged conspiracy;

paragraph 48 states that "Ganos conspired with L.M. and Sonag Company to

engage in the types of financial transactions described" in the count. Id. at ¶48.

Again, the details of the transactions alleged in Count Fourteen are not

necessary to understand Ganos's motion.

B.    The Arguments in the Motions

Sonag asserted that, as a matter of law, "a solely-owned corporation

cannot conspire separably from its owner." Dkt. No. 36 at 3. It argued that "the

acts and agreements of the owner are the acts and agreements of the

corporation and are the only way in which the solely-owned corporation, itself a

legal fiction at all only by statute, can act or agree, when the owner holds all

shares of the corporation." Id.

Despite the straightforward nature of this argument, Sonag filed a

fourteen-page brief in support of the motion. Dkt. No. 37. After explaining that

the superseding indictment does not allege that Sonag committed any

substantive offenses, id. at 2-4, the brief devotes six pages to tracing the

development of the law of conspiracy, starting in England in the late thirteenth

and early fourteenth centuries and moving through its growing popularity in

the early twentieth century United States to the doctrine of intra-corporate

conspiracies in the "modern era." Id. at 4-10. While conceding that an intra-

corporate conspiracy is possible in criminal cases, Sonag argued that an intra-

corporate conspiracy "requires two or more agents of the corporation, not just

4

one." Id. at 10 (citing United States v. Hughes Aircraft Co., Inc., 20 F.3d 974, 979 (9th Cir. 1994); United States v. Sain, 141 F.3d 463, 474-75 (3d Cir. 1998); United States v. Hartley, 678 F.2d 961, 970-972 (11th Cir. 1982), cert. denied, 459 U.S. 1170 (1983)). Sonag explained that

> [w]ithout at least one other mind in accord, there is no "agreement" in any coherent sense at all; there is only a bad idea hiding between two ears. That idea may die or remain inert. Only if two or more people share it, affirm it mutually, does the risk arise that the inertia or second thoughts of one will not stop action of the other, or that each will be emboldened by a sense of shared mission.

Id. at 7.

Sonag reached the heart of his argument on the penultimate page of the brief. It asserted that, while Brian Ganos "may remain a defendant in Count 1," because the superseding indictment charged him with conspiracy with Spindler (an individual) and Nuvo (a corporate entity), "as a matter of law, Sonag could not have conspired separately with anyone." Id. at 13. Thus, Sonag asserted, the court must dismiss Count One "as to Sonag." Id. It argued that the court must dismiss Count Fourteen entirely, because "Sonag and Ganos are the only two named defendants in that count and the superseding indictment suggests nobody else with whom they legally could have conspired." Id. It said that "[a] single formulaic reference to 'other persons and entities known and unknown to the Grand Jury' does not cut it." Id.

Ganos, relying on Sonag's brief, was concise. Dkt. No. 38. He asserted simply that Count Fourteen accuses him of conspiring with his own, solely-owned corporation, and that "[a] single owner and his corporation cannot conspire with each other." Id. at 3 (case citations omitted).

5

C.    The Government's Response

The government responded that rather than standing for the proposition that a solely-owned corporation was incapable of conspiring, the cases the defendants had cited stood for "the much narrower proposition that a solely-owned corporation cannot conspire solely with its owner . . . ." Dkt. No. 57 at 1-2. Dkt. No. 57 at 2. That proposition, the government asserted, did not require dismissal of Counts One and Fourteen, because "the Superseding Indictment alleges a conspiracy that involved additional human and corporate co-conspirators beyond Sonag's owner, Ganos." Id. at 2.

The government contended that the defendants based their argument on a logical fallacy—

> (1)    Premise: An intra-corporate conspiracy requires two human individuals acting on behalf of a corporation.
>
> (2)    Premise: A corporation can only be guilty of a conspiracy through an intra-corporate conspiracy.
>
> (3)    Conclusion: A solely-owned and solely-controlled corporation cannot conspire as a matter of law because there is no way it can form an intra-corporate conspiracy.

Id. at 2 (citation omitted). It argued that the second premise is false, citing cases recognizing that solely-owned and operated corporations are capable of conspiring with other entities or individuals outside the corporation. Id. The government also disputed the defendants' assertions that Ganos was the only possible human who could have worked for, controlled or acted on behalf of Sonag. Id. at 3.

The government pointed out that Count One of the superseding indictment alleges that Sonag and Ganos conspired with Spindler, Nuvo Construction Company and unindicted co-conspirators J.L., J.H. and T.A. Id. at 4-5. It observed that Count Fourteen alleges that Sonag and Ganos conspired to engage in money laundering with unindicted co-conspirator L.M. Id. Finally, the government noted that, if it does not prove at trial that Sonag conspired with an individual or entity other than Ganos, Sonag could move for dismissal at the close of the government's case-in-chief. Id. at 5.

D.    The Defendants' Replies

In reply, Sonag accused the government of "sovereign sophistry," based on its perception that the government had argued that Sonag—separate from Ganos—could conspire with others. Dkt. No. 63 at 1. It argued for the first time that "the attempt to try or to punish both Sonag and Ganos for the conspiracies alleged in Counts 1 and 14 is an attempt to impose double jeopardy on Ganos." Id. at 2. Interestingly, Sonag asserted that *Ganos* faces "conviction and punishment twice on both Counts 1 and 14: once for what he agreed as Brian Ganos and again for the self-same agreement as Ganos for Sonag." Id. While conceding that it "cannot speak for Ganos here, of course," Sonag pointed out that Ganos had joined Sonag's motion to dismiss Counts One and Fourteen, and advised Ganos to "consider an *Abney* appeal if the

7

government's effort to try both him and his solely-owned, solely controlled fictional creature succeeds on these pretrial motions."[2] Id. at 10.

Sonag also argued that what it characterized as the government's reasoning—that Sonag could conspire with outside people and that Ganos could conspire with (possibly the same) outside people—led to the conclusion that Counts One and Fourteen are duplicitous, charging two conspiracies in the same counts. Id. at 11. Sonag also asserted that "[t]he grand jury here clearly meant to charge only one conspiracy—one in which Ganos and Sonag, impossibly as a legal matter here, conspired with each other," and that the government's "effort at mitosis to create two conspiracies in one count where the grand jury meant only one" violated the Grand Jury Clause of the Fifth Amendment. Id. at 12 (citing United States v. Miller, 471 U.S. 130, 135-45 (1985). Finally, Sonag accused of the government of postulating a "parade of horribles," a world where individuals could form solely-owned corporations, use those corporations to commit fraud, then escape liability because a solely-owned conspiracy cannot (according to Sonag) conspire. Id. at 13. Sonag pooh-poohed this postulation, arguing that the individual owner still could be held liable, as could the corporation if two or more individuals

---

[2] In Abney v. United States, 431 U.S. 651, 662 (1977), the Supreme Court held that "pretrial orders rejecting claims of former jeopardy, such as that presently before us, constitute 'final decisions' and thus satisfy the jurisdictional prerequisites of [28 U.S.C. §] 1291."

within the corporation conspired, and stated that "[t]he government should cancel plans for this parade." <u>Id.</u> at 13-14.

Ganos's reply consisted of a single paragraph, adopting Sonag's reply and stating that "Ganos and Sonag are not just a palindrome" but are, in fact and law, the same. Dkt. No. 66.

## II.   RECOMMENDATION

Judge Jones recommended that the court deny the motions because the superseding indictment alleged an agreement between Sonag, Ganos and at least one other person. Dkt. No. 90 at 3. He began with two premises: (1) a conspiracy requires at least two people, <u>id.</u> at 5 (citing <u>Rogers v. United States</u>, 340 U.S. 367, 375 (1951)); and (2) a corporation is criminally liable for the crimes, including conspiracy, committed at least in part for its benefit, by its officers, employees and agents, <u>id.</u> at 6 (citing Charles Doyle, Cong. Research Serv., R41223, <u>Federal Conspiracy Law: A Brief Overview</u> 4 (2016); Section 5.03, Pattern Criminal Jury Instructions of the Seventh Circuit (2012 ed.)).

Judge Jones rejected Sonag's intra-corporate conspiracy arguments as misplaced because the superseding indictment does not charge Ganos and Sonag with engaging in a wholly intra-corporate conspiracy. <u>Id.</u> at 8. He recounted that Count One charged Ganos and Sonag with knowingly conspiring with Spindler (an outside accountant) and Nuvo (a corporation in which Ganos is the minority owner) to engage in mail and wire fraud. <u>Id.</u> at 7 (citing dkt. no. 25 at ¶1). He pointed out that Count Fourteen alleges that

Ganos and Sonag conspired with L.M. (an outside professional consultant) and other Ganos-affiliated entities. <u>Id.</u> (citing dkt. no. 25 at ¶46).

Judge Jones explained that whether a corporate employer may be charged with a conspiracy depends on ordinary agency principles. <u>Id.</u> at 8. He referenced the Third Circuit's decision in <u>United States v. Sain</u>, 141 F.3d 463, 475 (3d Cir. 1998), holding that if a corporation's agent conspires with another person, the corporation may be held criminally liable, and an Eleventh Circuit decision, <u>United States v. Stevens,</u> 909 F.2d 431, 431 (11th Cir. 1990), which held that "a sole stockholder who completely controls a corporation and is the sole actor in performance of corporate activities cannot be guilty of a criminal conspiracy with that corporation *in the absence of another human actor.*" (Emphasis added.) Judge Jones used some of the secondary authority cited by Sonag to support his conclusion that a corporation and its corporate agent may face criminal liability for conspiring with a third person. Dkt. No. 90 at 9 (citing Martin, <u>Intracorporate Conspiracies</u>, 50 Stan. L. Rev. 399, 408 (1998) ("If a corporate employee has conspired with some outside agent, she can validly be charged with conspiracy. Her corporate employer may also be punished under a respondeat superior theory of agency."); <u>Developments in the Law: Criminal Conspiracy</u>, 72 Harv. L. Rev. 922, 951 (1959) ("When two corporations and an officer of each are indicted, the necessary plurality is evident. It is also apparent when a corporation, one of its officers, and a third person combine for unlawful ends.")). He noted that Sonag had provided him with no authority to support its claim that a solely owned corporation and its owner could not be

members of the same conspiracy as a matter of law. Id. at 10. Judge Jones agreed with the government the cases that cases Sonag had cited stood for a narrower principle: "a solely owned corporation cannot conspire *solely* with its owner." Id.

Judge Jones found that Sonag had forfeited its double jeopardy arguments by failing to raise them in its opening brief, but he also found the arguments unpersuasive. Id. at 11. He reasoned that because Sonag is a separate legal entity with an existence independent of the individual who composes it, Sain, 141 F.3d at 474, it can face its own punishment for the two charged conspiracies. Id. at 12. As for the argument that the charges are duplicitous, Judge Jones found that Sonag's theory rested on the faulty premise that a solely owned corporation *never* could be charged with conspiring with its owner. Id. Because there is no prohibition on an owner and his corporation being charged in the same conspiracy, Judge Jones concluded that the government's argument had not impermissibly broadened the superseding indictment. Id. at 13.

Judge Jones found no support for the legal remedy sought by either defendant. Id. Rather than "killing a mosquito with a canon" by dismissing the indictment, he pointed out that the court could instruct the jury that it could not convict Ganos or Sonag on Counts One and Fourteen if it found that the evidence showed they conspired only with each other. Id.

### III. OBJECTIONS

Sonag's fifteen-page argument in support of the motion to dismiss blossomed into a twenty-seven-page objection, although most of the objection consists of a restatement of the original arguments. Dkt. No. 96. In a patronizing tone, Sonag argued that Judge Jones's reasoning "takes to the edge, or past, the fiction that a corporation is a 'person.'" Id. at 6. Perhaps concerned that this court would struggle to grasp its argument, Sonag provided an illustration:

> If Dorothy creates the scarecrow and then has an idea, the scarecrow is only that: a straw-stuffed dummy. But if an outsider, Glinda the good witch, reaches an agreement with Dorothy on the same idea, now suddenly the scarecrow is imbued with the brain he never had, springs to life, and may conspire as a third. He does that even though Dorothy made him and controls him.

Id. In case the Wizard of Oz illustration was too complex, Sonag offered a mathematical analogy:

> One plus her solely-owned corporation still is one; the plurality necessary to a conspiracy is missing. But one plus one outsider plus that same zero, the solely-owned corporation, now is not two; it is three. At least it is in the magistrate judge's mathematical scheme.

Id.

Sonag asserted that this court will "have to decide whether it will carry a legal fiction quite this far." Id. at 7. It implied, through a philosophical contemplation of the role of legal fictions (such as corporate personhood) in a system that purports to seek truth through "evidence-based decision-making," that if this court adopts Judge Jones's recommendation, it will subvert the adversarial system. Id. To avoid such an unconscionable result, Sonag asserted

that the court must dismiss Count One as to Sonag (abandoning Ganos to his fate) and dismiss Count Fourteen altogether. Id. at 26. In the alternative, it argued that the court "should rule that it will instruct the trial jury that neither Sonag nor Brian Ganos can be convicted on Counts 1 and 14 unless the proof at trial establishes, beyond a reasonable doubt, that one or more other human beings within Sonag—its own employees or agents—conspired with Ganos to reach the agreements alleged in those counts." Id.

Ganos, as has been his wont, filed a spare, two-page objection, taking issue with Judge Jones's conclusion that Count Fourteen satisfied the requirement "that it takes at least two persons to conspire." Dkt. No. 99. He asserted that "conspiracy between Brian Ganos cannot have conspired with Sonag Company, Inc., the solely-owned corporation, which is also a defendant here." Id.

The government responded that Counts One and Fourteen recited the elements of the charged offenses, informed the defendants of the charges so that they could prepare a defense, enabled them to evaluate any double jeopardy problems and alleged that Ganos and Sonag conspired with others. Dkt. No. 101 at 4-6.

Sonag's reply was consistent in tone with its objection, accusing the government of "join[ing] the magistrate judge, lurking with him in the fiction section of the law library." Dkt. No. 102 at 1. It raised a new argument—that the allegation that Ganos conspired with L.M. is barred by the statute of limitations. Id. at 2-3. Returning to its recitation of the history of the

conspiracy doctrine, Sonag accused the government of "ahistorical naivete." <u>Id.</u> at 4. Sonag insisted that it recited the history it did, "not for idle pedantry, but to remind all of the reality and doctrinal history in which cases like [the ones it cited in its motion] are rooted." <u>Id.</u> Implying that any decision other than a ruling in its favor would betray ignorance and lack of intellectual rigor on the part of the deciding judge, Sonag reasoned that if judges are "learned, and reasonably can expect that the lawyers who practice before them remain part of a learned profession," those judges "reasonably can *rely* on history, rather than recite it over and over again." <u>Id.</u> Sonag argued that anyone who understands the history it has recounted will interpret the cases it cited as supporting its claims. <u>Id.</u> Revisiting its parade imagery, Sonag urged the court not to "flee the parade grounds [of the parade of horribles] in a panic," assuring the court that it need not fret that granting its motion will leave no one responsible for the alleged wrongs described in the superseding indictment. <u>Id.</u> at 5-6. It reiterated that the individual who owns the solely-owned corporation still faces prosecution and possible conviction. <u>Id.</u> Sonag concluded that if this court grants its motion,

> . . . truth will have gained one more foothold in law. Reality will have staked one new, small claim. Untruth and make-believe will have suffered one small defeat. That yet may be important now, if only symbolically. Sometimes symbols—and the non-fiction, the truth, that they signify—matter.

<u>Id.</u> at 7.

## IV.  ANALYSIS

### A.  Standard of Review

Under Fed. R. Crim. P. 59(b)(3), the district court considers *de novo* objections to the magistrate judge's recommendation. The district judge may accept the magistrate judge's recommendation, reject it or modify it. 28 U.S.C. § 636(b)(1).

### B.  Standard for Dismissal of Indictment

Fed. R. Crim. P. 7 requires the indictment be "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). An indictment is sufficient if it states each element of the alleged offense, provides the defendant with information for the preparation of his defense and provides a sufficient basis for a judgment that would bar any subsequent prosecution for the same offense. United States v. Miller, 883 F.3d 998, 1002 (7th Cir. 2018). At the pretrial stage, a motion to dismiss tests only the sufficiency of indictment. United States v. Risk, 843 F.2d 1059, 1061 (7th Cir. 1988). A court considering a motion to dismiss does not ask whether the indictment could have been framed "in a more satisfactory manner" but whether the indictment "conforms to minimal constitutional standards." United States v. Vaughn, 722 F.3d 918, 925 (7th Cir. 2013) (quoting United States v. Hausmann, 345 F.3d 952, 955 (7th Cir. 2003)). "[W]hen evaluating the sufficiency of an indictment, [the court] focus[es] on its allegations, which [the court] accept[s] as true," and "'[c]hallenging an indictment is not a means of testing the strength or weakness of the

government's case, or the sufficiency of the government's evidence.'" <u>United States v. Moore</u>, 563 F.3d 583, 586 (7th Cir. 2009) (quoting <u>United States v. Todd</u>, 446 F.3d 1062, 1067 (10th Cir. 2006)).

C.    <u>Defendants' Failure to Demonstrate that the Indictment is Insufficient</u>

As <u>Miller</u> requires, the court first considers whether the charges identify the elements of the charged offenses. Counts One and Fourteen identify the elements of the charged offenses, and the defendants haven't argued otherwise. Count One provides extensive detail about the mechanics of the alleged conspiracy and of the substantive mail and wire fraud offenses, the requirements of the programs that the defendants allegedly tried to defraud, the roles of the defendants and various other indicted and un-indicted co-conspirators and the use of interstate wires and mail to perpetuate the frauds. Count Fourteen identifies the elements of a money laundering conspiracy, describing how the funds allegedly were laundered, explaining their source as the proceeds of illegal activities (mail and wire fraud), alleging collaborative effort (the conspiracy) and asserting that the conduct was knowing and intentional.

The court next asks whether the counts fairly inform the defendants of the acts of which they've been accused, so that they can defend against the charges. Like the challenged indictment in <u>Moore</u>, "[the] factual backdrop [provided in Counts One and Fourteen] gave the defendants plenty of ammunition to prepare their defense . . . ." <u>Moore</u>, 563 F.3d at 586. The

defendants' motions show that they understand the charges well, and that they are zealously defending themselves against those charges.

Finally, the court asks whether the challenged counts allow the defendants to evaluate any possible double jeopardy issues. The fact that Sonag attempted to raise a double jeopardy issue at the motion to dismiss stage, and that Ganos adopted Sonag's pleadings, proves that the defendants are able to evaluate possible double jeopardy issues.

The defendants have not demonstrated that Counts One and Fourteen are insufficient under Rule 7 or Seventh Circuit law.

D.    Impossibility Defense

If the defendants have not alleged that Counts One and Fourteen fail to state the elements of the offenses, or that they don't adequately inform the defendants of the charges against which they must defend themselves, or that they don't allow the defendants to evaluate possible double jeopardy issues, then what is their basis for arguing that the indictment is defective?

Sonag asserts that it is incapable of conspiring with Ganos. It also asserts that it is incapable of conspiring "with anyone else," arguing that only Ganos could conspire with someone else. Dkt. No. 96 at 26. Sonag reasons that a solely-owned corporation like Sonag isn't capable of conspiring—period. It argues that Sonag *is* Brian Ganos; Sonag couldn't agree to commit a crime if Brian Ganos didn't agree to do so; Brian Ganos would have to agree to commit a crime for Sonag to do so. Sonag maintains that because Sonag can't agree to commit a crime unless Ganos does, the court must dismiss the conspiracy

17

counts against Sonag (and Ganos argues that once it does so, the court must dismiss Count Fourteen against Ganos, because he'd be the only defendant left and he can't conspire with himself). This argument sounds like an assertion of the common-law defense of impossibility.

> The common law distinguishes between legal and factual impossibilities, providing that the former is a defense and that the latter is not. Factual impossibility "'is said to occur when extraneous circumstances unknown to the act or beyond his control prevent consummation of the intended crime.'" By contrast, "'[l]egal impossibility is said to occur where the intended acts, even if completed, would not amount to a crime.'" Legal impossibility has been said to apply when a person accepts goods mistakenly believed to be stolen, when a hunter shoots a stuffed deer believing it to be alive, and when a prisoner attempts to smuggle letters out of prison under the mistaken belief that the warden has not consented. A classic example of factual impossibility is when a person fires a gun at a bed intending to kill another person, but the intended victim is not in the bed; the crime cannot be completed because of extraneous factors beyond the shooters control.

United States v. Tykarsky, 446 F.3d 458, 465 (3rd Cir. 2006) (citations omitted). Sonag seems to argue that it is factually impossible for it to conspire. There are a couple of problems with this argument.

First, Sonag hasn't identified a single case holding that a solely-owned corporation can't conspire with someone. It cites the Eleventh Circuit's decision Stevens, but Stevens didn't say that a solely-owned corporation can't conspire with *anyone*. Stevens said that "[a] sole stockholder who completely controls a corporation and is the sole actor in performance of corporate activities []cannot be guilty of a criminal conspiracy with that corporation *in the absence of another human actor*." Stevens, 909 F.2d at 431 (emphasis added). The reasoning in Stevens leads to the conclusion that the owner of the solely-owned

corporation (Ganos) can't conspire with that corporation (Sonag) if there isn't another human actor in the mix.

Under the heading "Sonag Could Not Conspire," Sonag also cites <u>United States v. Carroll</u>, 144 F. Supp. 939 (S.D.N.Y. 1956). Dkt. No. 96 at 12. The grand jury in <u>Carroll</u> charged five defendants—including a company called Sheba Bracelets, Inc. and individual defendant Robert Carroll—with conspiring to violate "the gold laws." <u>Id.</u> at 940. The government asked to sever two of the five defendants before trial and moved to dismiss a third defendant at the close of its case in chief. <u>Id.</u> at 941. That left a conspiracy count against Sheba Bracelets, Inc. and Carroll; Sheba Bracelets, Inc. and Carroll moved to dismiss the conspiracy count. <u>Id.</u> The court granted that motion.

The evidence at trial did not show who owned Sheba Bracelets, Inc., but according to the district court, the corporation was "domina[ted]" by Carroll. <u>Id.</u> There was no evidence that anyone other than Sheba Bracelets, Inc. and Carroll were involved in the conspiracy. That meant that any conspiracy—any agreement to commit a crime—was "between the defendant Carroll and the business institution he used to carry out his purposes." <u>Id.</u>

The judge explained that the reason conspiracy is a separate crime from the underlying substantive offense is because of the need to "separately penalize and to deter criminal organization, an evil quite apart from the substantive delicts which more likely than not result from such organization." <u>Id.</u> at 942. The court observed that charging corporations with conspiring with each other, or charging them with conspiring with individuals, accomplished

that purpose. It reasoned, however, that when a single person owns a corporation, and uses that corporation to commit a crime, "[t]here is no organization and no one other than the sole criminal to deter or punish." Id. The court opined that, having failed to prove a conspiracy between Carroll/Sheba and the three severed defendants, the government had improperly "[sought] to accomplish the same purpose by breathing life and purpose, and thereby creating the requisite independent personality, into an institution manipulated solely by the individual from whom independence is required for criminality." Id.

The government argues that Carroll held that the sole owner of a corporation can't conspire with the corporation. Dkt. No. 101 at 8. The government agrees with that holding, so to the extent that the defendants argue that it is impossible for Ganos and Sonag to conspire with each other, there is no dispute. And because Ganos is the sole owner of Sonag, it is difficult for the court to see how the defendants' arguments regarding intra-corporate conspiracies—the civil doctrine that generally holds that "corporate officers acting within the scope of their employment cannot conspire with one another or with the corporation"—is relevant. Starsurgical, Inc. v. Aperta, LLC, 40 F. Supp. 3d 1069, 1078 (E.D. Wis. 2014) (citations omitted). If Counts One and Fourteen had charged Ganos and Sonag with conspiring *only* with each other and no one else, the defendants would be right that there could be no conspiracy (although it wouldn't be because of the intra-corporate conspiracy doctrine—it would be because a person can't conspire with himself, even if the

"himself" is himself in his capacity as owner of his corporation). But Counts One and Fourteen accuse the defendants of conspiring with others.

Perhaps more relevant is what the <u>Carroll</u> decision does *not* say. <u>Carroll</u> does *not* say that a solely owned corporation is incapable of conspiring with a person or entity *other* than its sole owner. *None* of the cases Sonag cites at pages 13 and 14 of its objection to Judge Jones's recommendation say that a solely-owned corporation can't conspire with a person or entity other than its sole owner. Not a one. The Supreme Court has held in the context of civil RICO that a "corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status." <u>Cedric Kushner Promotions, Ltd. v. King</u>, 533 U.S. 158, 163 (2001). This is true "even where the employee is the corporation's sole owner," because "incorporation's basic purpose is to create a distinct legal entity, with legal rights, obligations, powers, and privileges different from those of the natural individuals who created it, who own it, or whom it employs." <u>Id.</u> (citations omitted).

The defendants argue strenuously that, particularly in the case of a solely-owned corporation, the idea of a corporation (Sonag) having a separate identity from its owner (Ganos) is fiction, and that because the independent corporate entity is a legal fiction, the court should find that it is impossible for that legal fiction to conspire with another entity or with a person. The defendants aren't the first to question how a legal concept that does not eat, walk, blink or hiccup—something that exists by virtue of filing the right papers

21

with the right department and paying the right fee—can "be" and "act," in the existential sense. But the Supreme Court has held that it can. A corporation may be a legal fiction, but is ability to commit crimes—including conspiracy—is a legal fact, and one that this court can't change.

The defendants have not cited to a single case holding that the corporation could not conspire with an entity or person other than Ganos.

Second, factual impossibility is a *defense.* Sonag is free to argue to the jury that it is, for all purposes relevant to this case, Brian Ganos. It is free to tell the jury that it can't conspire with Brian Ganos and that it can't conspire with anyone without Brian Ganos.

Third, the superseding indictment alleges that Sonag conspired with someone other than its owner, and that Ganos conspired with someone other than Sonag. Count One lists Mark Spindler as someone with whom Sonag and Ganos could have conspired. It lists Nuvo Construction Company as an entity with whom Sonag and Ganos could have conspired. It says that the defendants conspired with each other "and other persons and entities known and unknown to the Grand Jury;" even crediting Sonag's assertion that this boilerplate language "does not cut it," Count One doesn't leave it at that.[3] It discusses J.L., J.H., T.A. and O.M.—straw owners allegedly conscripted to

---

[3] The Seventh Circuit seems to think that the boilerplate language "cuts it." <u>See United States v. Townsend</u>, 924 F.2d 1385, 1389 (7th Cir. 1991) (holding that while it takes two to conspire, the government does not have to prove the identity of the co-conspirator, only the fact that the defendant joined the conspiracy, and directly referencing the boilerplate language).

create program eligibility where there was none. Whether the government will be able to prove beyond a reasonable doubt at trial that Sonag agreed with any of these people or entities to commit wire and mail fraud is not the question at the motion-to-dismiss stage. The question is whether Count One alleges a conspiracy, and it does.

The same goes for Count Fourteen. True, Count Fourteen names only Ganos and Sonag as defendants, and says that they "conspired with each other." But it also alleges that each of those defendants conspired with "L.M.," and with "Ganos-controlled entities Sonag I, LLC and Trinity Marketing Services, Inc." Dkt. No. 25 at ¶46. Will the government be able to prove beyond a reasonable doubt at trial that Sonag conspired with L.M.? The answer is not relevant to the motion to dismiss. Count Fourteen alleges an agreement in which Ganos, Sonag and at least one person—L.M.—agreed to launder money, and that is all that is needed to survive a motion to dismiss the indictment.

The court will not dismiss Count One as to Sonag, nor will it dismiss Count Fourteen.

### E.    Defendants' Other Legal Theories

Judge Jones—despite the defendants' description of him as a befuddled researcher meandering through the wrong section of the law library—gave the defendants' legal theories detailed attention. He spent several pages discussing their theories regarding plurality and the intra-corporate conspiracy doctrine. As the court indicated above, it is not sure those theories warranted much attention. The Seventh Circuit has discussed the intra-corporate conspiracy

23

doctrine in the context of civil rights law, employment suits against government entities and suits against supervisors and subordinates. Dombrowski v. Dowling, 459 F.2d 190, 196 (7th Cir. 1972); Travis v. Gary Cmty. Mental Health Center, Inc., 921 F.2d 108, 109 (7th Cir. 1990); Wright v. Ill. Dept. of Children & Family Servs., 40 F.3d 1492, 1508-09 (7th Cir. 1994); Payton v. Rush-Presbyterian-St.Luke's Med. Ctr., 184 F.3d 623, 633 (7th Cir. 1999). This court has not found a case in which the Seventh Circuit extended the doctrine in the criminal context to prevent the United States from charging a corporation, its owner and others in a single conspiracy count.

Judge Jones also addressed the argument, raised by Sonag for the first time in its reply brief, that naming Ganos and Sonag in the two conspiracy counts raises double jeopardy concerns. Judge Jones found that the defendants had waived this argument, because they had not raised it in their initial briefs. "[A]rguments raised for the first time in a reply brief are waived." Darif v. Holder, 739 F.3d 329, 336 (7th Cir. 2014) (citations omitted). Sonag, in an un-numbered footnote in its objection, responds that its double jeopardy and duplicity arguments were a "direct reply to the government's unanticipated arguments" in the government response brief, and asserts that it can raise these arguments "at trial, even at the close of the evidence in a Rule 29 motion." Dkt. No. 96 at 20 n.*. Sonag didn't cite a case in support of this proposition. But the court can imagine situations in which a defendant would not be aware that he had a double jeopardy claim until the facts unfolded at trial.

To that point, Sonag didn't argue that Counts One and Fourteen violate the Double Jeopardy Clause of the Fifth Amendment. Rather, it warned the government that there might be what Sonag called an "unconsidered cost" if the government proceeded against both Sonag and Ganos on Counts One and Fourteen. Id. at 21. Sonag asserted that "[t]he Double Jeopardy Clause not only protects an accused from double punishment or two convictions for one offense; it protects him from standing trial at all if at risk of double jeopardy," and cites the Supreme Court's decision in Abney, 431 U.S. at 660-62. Id. at 21-22. It claimed that "[t]o vindicate that double jeopardy protection, the Supreme Court has acknowledged a right to an interlocutory appeal on a good faith double jeopardy claim, because win or lose at trial, the trial itself would negate the clause's intended protection." Id.

The court leaves to the government the choice of whether to heed Sonag's warning, but Sonag's reading stretches Abney all out of shape. In Abney, a jury convicted the petitioners. Abney, 431 U.S. at 655. The appeals court reversed the convictions and ordered a new trial, finding that the trial court had admitted evidence without proper authentication and agreeing that the indictment was duplicitous. Id. The appellate court didn't rule on the government's argument that jury instructions had cured the duplicity problem; because it was remanding on the evidentiary error anyway, it "directed the Government to elect between the conspiracy and attempt charges on remand in order to avoid any similar problems at the next trial." Id. The government chose to proceed on the conspiracy charge, and the petitioners filed a pretrial motion

asking the trial court to dismiss the indictment because jeopardy had attached on that charge in the first trial. Id.

In deciding that the district court's order denying the double jeopardy motion was a final, appealable order, the Supreme Court noted that "the Double Jeopardy Clause protects an individual against more than being subjected to double punishments. It is a guarantee against being twice put to trial for the same offense." Id. at 660-661. The Court explained that the focus was on the "risk" of conviction, and that "the guarantee against double jeopardy assures an individual that, among other things, he will not be forced, with certain exceptions, to endure the personal strain, public embarrassment, and expense of a criminal trial more than once for the same offense." Id. at 661.

> The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offence, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.

Id. at 661-62 (quoting Green v. United States, 355 U.S. 184, 187-88 (1957)). This reasoning led the Court to conclude, "We therefore hold that pretrial orders rejecting claims *of former jeopardy*, such as that presently before us, constitute 'final decisions' and thus satisfy the jurisdictional prerequisites of [28 U.S.C. §1291]." (Emphasis added.)

Even if the defendants have not waived any double jeopardy arguments, and even if facts develop so that such arguments present themselves during or

after trial, this case does *not* involve former jeopardy. In denying the motions to dismiss, the court is not rejecting any claim of former jeopardy, and Sonag's reliance on <u>Abney</u> is misplaced.

Judge Jones also considered the argument, raised for the first time in Sonag's reply brief, that Counts One and Fourteen were duplicitous. Sonag had argued that because Ganos and Sonag can't conspire with each other, by naming both of them in Counts One and Fourteen, the government had alleged two conspiracies—one in which Ganos agreed with people/entities other than Sonag to commit the crimes alleged in each of the counts, and the other in which Sonag conspired with people/entities other than Ganos to the commit crimes alleged in each of the counts. Dkt. No. 63 at 11. Sonag characterized this as a "classic duplicitous charge problem." <u>Id.</u> Judge Jones disagreed, concluding that Count One charged Sonag and Ganos with conspiring with Spindler, Nuvo and others, and that Count Fourteen charged them with conspiring with L.M. and others. Dkt. No. 90 at 12.

Judge Jones didn't comment on the fact that Sonag had waived this argument by failing to raise it in its opening brief, even though he could have. And Sonag hasn't cited any authority for its assertion that it can raise duplicity at any time. It doesn't matter, though, because the Seventh Circuit disposed of the defendants' argument some time ago. In <u>United States v. Townsend</u>, 924 F.2d 1385 (7th Cir. 1991), the grand jury had charged several individuals with conspiracy. On appeal, the defendants argued "that the government's proof failed to establish the existence of a single, ongoing conspiracy, as charged in

27

its indictment." Id. at 1388. The Seventh Circuit rejected the suggestion that "if the evidence is insufficient to support the jury's finding that a defendant conspired with every defendant charged in the indictment his conviction must fail." Id. at 1389. The court explained that

> [t]he crime of conspiracy focuses on agreements, not groups. True, it takes at least two to conspire, but the government doesn't have to prove with whom a defendant conspired; it need only prove that the defendant joined the conspiracy alleged, not the group. "[I]t is the grand jury's statement of the 'existence of the conspiracy agreement rather than the identity of those who agree' which places the defendant on notice of the charge he must be prepared to meet. Thus the government is permitted to allege in an indictment, as it did in this case, that, in addition to the defendants named in a conspiracy count, the defendants conspired "with others known and unknown to the grand jury."

Id. at 1389-1390 (citations omitted). The Townsend court also made clear that "[w]hether a single conspiracy exists is a question of fact; consequently '[t]he jury gets first crack at deciding "whether there is one conspiracy or several when the possibility of a variance appears."'" Id. at 1389 (citation omitted).

The fact that Ganos can't be convicted of conspiring with Sonag, and that Sonag can't be convicted of conspiring with Ganos, does not lead to the conclusion that Counts One and Fourteen each charge two, separate conspiracies. Count One charges a single agreement and alleges that both Ganos and Sonag joined it (as well as others). Count Fourteen charges another single agreement and alleges that both Ganos and Sonag joined it (as well as others).

Sonag raised a third argument in its reply that it had not raised in the original brief—it argued that the grand jury intended to charge a single

28

conspiracy, in which Ganos and Sonag conspired with each other, and that by asserting that Ganos and Sonag could have conspired with others than themselves, the government broadened Counts One and Fourteen beyond what the jury intended in violation of the Grand Jury Clause of the Fifth Amendment. Dkt. No. 63 at 11-12. Judge Jones did not address that argument. Sonag doesn't explain how it knows what the grand jury intended. It cites Stirone v. United States, 361 U.S. 212 (1960), which holds that a court cannot permit a defendant to be tried on charges that are not made in the indictment against him. This court agrees, but the grand jury has charged Ganos and Sonag with conspiracy, and the government appears to intend to try them for conspiracy. (Sonag also cited United States v. Miller, 471 U.S. 130 (1985), which rejected an argument based on Stirone.)

Finally, at the end of his recommendation, Judge Jones said that even if the defendants are correct that a jury could not convict both Ganos and Sonag of conspiring with the same third parties to commit the same crimes, the solution is not dismissal of Counts One and Fourteen. He noted that this court could address the problem by giving an appropriate jury instruction. Dkt. No. 90 at 13. Judge Jones suggested that the court could instruct the jury "that it could not convict Mr. Ganos or Sonag of Count One or Count Fourteen if they were the only two conspirators." Id. Sonag takes this humble suggestion and turns it into an argument that if this court denies the motions to dismiss, the court "should rule that it will instruct the trial jury that neither Sonag nor Brian Ganos can be convicted on Counts 1 and 14 unless the proof at trial

29

establishes, beyond a reasonable doubt, that one or more other human beings within Sonag—its own employees or agents—conspired with Ganos to reach the agreements alleged in this counts." Dkt. No. 96 at 26.

The court will not make that ruling. First, any ruling on any jury instruction is premature. On March 13, 2019, the court issued a criminal pretrial order. Dkt. No. 117. It required that by May 30, 2019, the parties must file (among other things) a list of proposed Seventh Circuit pattern jury instructions, "and the text of any proposed non-pattern instructions." Id. at 2. The parties since have asked the court to extend the deadline to June 6, 2019, dkt. no. 143, and the court has granted that motion, dkt. no. 144. All parties— including Sonag and Ganos—should submit the text of any proposed non-pattern jury instructions by that date, and the court will review them itself and with the parties.

Second, if Sonag or Ganos submit a jury instruction mirroring the language in Sonag's objection, the court will decline to give that instruction, because it isn't an accurate statement of the law where the indictment charges Ganos and Sonag with conspiring with entities and people other than themselves.

## V.    *MEA CULPA*

The objections to Judge Jones's report and recommendation were fully briefed five months ago. The court should have issued this order far sooner than it has. The court's congested docket is no excuse, but the court offers it as an admittedly poor explanation for the delay. It acknowledges that Sonag and

the government have fully briefed Sonag's objection to Judge Jones's order on another of Sonag's motions, and assures the parties that it is aware of the need to rule on that motion. The court apologizes to the parties for its tardiness.

## VI.  CONCLUSION

The court **ADOPTS** Judge Jones's recommendation that the court deny Sonag's motion to dismiss Counts One and Fourteen and deny Ganos's motion to dismiss Count Fourteen. Dkt. No. 90.

The court **DENIES** defendant Sonag's motion to dismiss Counts One and Fourteen. Dkt. No. 36.

The court **DENIES** defendant Ganos's motion to dismiss Count Fourteen. Dkt. No. 38.

Dated in Milwaukee, Wisconsin this 20th day of May, 2019.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**